**Jimmie Lee RILEY, Plaintiff,**

v.

**David T. KURTZ, Defendant.**

**No. 94–CV–71263–DT.**

United States District Court,
E.D. Michigan,
Southern Division.

June 6, 1995.

Jimmie Lee Riley, pro se.

Anthony P. Govorchin and Christine M. Campbell, Michigan Dept. of Atty. Gen., Corrections Div., Lansing, MI, for defendant.

## MEMORANDUM OPINION AND ORDER

HOOD, District Judge.

This matter is before the Court on Magistrate Judge Steven D. Pepe's Report and Recommendation dated February 28, 1995. Defendant Kurtz filed an objection thereto.

The Court has had an opportunity to review this matter and finds that the Magistrate Judge reached the correct conclusion for the proper reasons.

The Magistrate Judge's Report indicates that Plaintiff raises two claims. First, Plaintiff claims that defendant retaliated and threatened to retaliate against him for the

exercise of his First Amendment Rights. Second, Plaintiff claims that his legal mail was "censored" and read by Defendant.

Retaliation against the exercise of First Amendment rights is itself a violation of the First Amendment. *Zilich v. Longo*, 34 F.3d 359, 364 (6th Cir.1994). The United States Supreme Court in *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977), used a two-step test for determining cases of alleged retaliation for the exercise of First Amendment rights. First, plaintiff must show that his conduct was constitutionally protected. Second, plaintiff must show that the protected conduct was a substantial motivating factor in the alleged retaliatory conduct.

In deciding a motion to dismiss, the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true. 5A CHARLES A. WRIGHT & ARTHUR MILLER FEDERAL PRACTICE AND PROCEDURE § 1357, at 304 (2d Ed.1990); *Westlake v. Lucas*, 537 F.2d 857 (6th Cir.1976). The Court agrees with the Magistrate Judge's findings that for purposes of a motion to dismiss, Plaintiff established a prima facie case of retaliation. Plaintiff has shown that his actions of filing or threatening to file complaints against Defendant Kurtz, other appropriate government bodies and/or prison officials are activities that are protected by the First Amendment. Also, Plaintiff has shown that Defendant Kurtz threatened Plaintiff with retaliation.

The Court agrees with the Magistrate Judge's conclusion that as a result of an October 2, 1992 letter written by Plaintiff to the Warden, Defendant's subsequent actions amounted to retaliation. Therefore, Plaintiff has established a claim of retaliation.

As to Plaintiff's First Amendment claim of censorship of his legal mail, the Court agrees with the Magistrate Judge's findings that Plaintiff failed to allege specific facts which would support his claim that his mail was "censored". Conclusory unsupported allegations of constitutional deprivation do not state a claim. *Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir.1987),

*cert. denied,* 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987).

As to Plaintiff's First Amendment claim that Defendant read his legal mail, this Court agrees with the Magistrate Judge that Plaintiff did properly allege facts with specificity that his federal mail was read by Defendant.

Accordingly,

IT IS HEREBY ORDERED THAT the Report and Recommendation of Magistrate Judge Pepe dated February 28, 1995, is ACCEPTED and ADOPTED as this Court's findings of facts and conclusions of law;

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss is GRANTED as to plaintiff's claim that his mail was censored; and,

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss and/or for Summary Judgment is DENIED as to Plaintiff's claim under the First Amendment on the issues of retaliation and reading legal mail.

*REPORT AND RECOMMENDATION*

PEPE, United States Magistrate Judge.

Plaintiff is an inmate in the custody of the Michigan Department of Corrections ("MDOC"). He filed this action under 42 U.S.C. § 1983 alleging violations of his constitutional rights. Defendant filed a motion to dismiss and/or for summary judgment. This motion was referred to me for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff is a frequent litigant in this Court who acknowledges his "aggressive legal activities in the prison setting" (October 2, 1992, letter to Warden William Overton, Def. Ex. A–1, p. 2). He is claiming retaliation and threats of retaliation by the defendant for the exercise of his First Amendment rights, as well as interference with his legal mail.

*BACKGROUND*

At all times relevant to this case, plaintiff Riley was incarcerated in the Gus Harrison Correctional Facility ("Harrison") at Adrian, Michigan. At all times relevant to this case, defendant Kurtz was a unit officer at Harrison.

Plaintiff alleges that Kurtz "engaged in unprofessional behavior relating to an assault incident[ ] involving another prisoner." Complaint at ¶ 6. He also alleges that Kurtz read plaintiff's "confidential legal correspondence from the federal courts." As a result of this latter action, plaintiff Riley threatened to pursue administrative action against Kurtz and threatened to investigate the possibility of legal action against him. Riley alleges that, as a result of these threats, officer Kurtz threatened to retaliate against plaintiff "whenever the opportunity presented itself."

Riley alleges in his verified complaint that Kurtz had a habit of closing the day room for one hour whenever he found a cigarette butt on the floor. Riley states that, on November 10, 1992, Kurtz closed the day room for an hour, ostensibly because a cigarette butt was found on the floor. Plaintiff states that there was no trash on the floor, suggesting that a more extensive closing of the day room for cleaning was not necessary. Plaintiff states that this action by defendant Kurtz violated an order from the Deputy Warden not to close the room for more than 30 minutes at a time. Riley urged other inmates to write grievances and have the Block Representative register their concerns about Kurtz with the Resident Unit Manager ("RUM").

Riley states that the RUM subsequently asked him what the problem was. Plaintiff replied that Kurtz was the problem.

A short while later, Riley received a pass to go to the law library. He alleges that he was in the library for about an hour when several officers converged on him and escorted him to the segregation unit. He states that he was told by a sergeant in the segregation unit that Kurtz heard that Riley singled Kurtz out as a "problem." Plaintiff alleges that Kurtz fabricated a disciplinary charge against plaintiff in retaliation for Riley's complaining about Kurtz's conduct in closing the day room.

Plaintiff also states that he informed defendant that he would be sued for censoring plaintiff's legal mail. Riley alleges that Kurtz "threatened to cause plaintiff undue hardship because of plaintiff's persistent ef-

forts (i.e., by letters and by verbal complaints) to have disciplinary sanctions imposed on defendant...." Complaint at ¶ 21. Inmate Jerry Weber has provided an affidavit stating that Kurtz on September 30 attempted to punch a prisoner who "was nonaggressive at the time." It was about this incident involving excessive use of force by Kurtz and an Officer Moore that Riley had earlier written Warden Overton. Weber's affidavit, as well as one by inmate Joseph Norris, confirm that Kurtz had made threats of retaliation toward Riley because of Riley's reporting Kurtz to the Warden.

Riley alleges that in the November 10 misconduct, Kurtz falsely accused Riley of incitement to riot or strike and failure to disperse. Riley notes that these are nonbondable charges and resulted in plaintiff being placed in temporary segregation pending disposition of the charges. He also alleges that Kurtz falsely accused Riley of threatening to tear the unit up unless officer Kurtz was transferred. Plaintiff denies making any threats to defendant or encouraging other inmates to chant for Kurtz's ouster. Riley accuses Kurtz of being "an unmitigated LIAR" (Complaint at ¶ 24) and "cunning," "devious," and "reprehensible" (Complaint at ¶ 37). Riley notes that prior to the incidents on November 10, 1992, he personally reported Kurtz's suspected wrongdoings to the deputy warden (Complaint at ¶ 11). An October 2, 1992, letter from Riley to Warden William Overton suggested that defendant Kurtz precipitated an incident leading to an assault on an inmate (Def.Ex. A–2), and a November 4, 1992, letter to Warden Overton accused defendant Kurtz of "harassment" and "intimidation" to retaliate for Riley writing the administrative complaint of October 2, 1992, against Kurtz (Def.Ex. A–2).

Plaintiff states that defendant's alleged actions deprived him of rights secured by the First and Fourteenth Amendments.[1] He also invokes the Court's supplemental jurisdiction over State law claims for intentional infliction of emotional and mental distress.

1. Plaintiff's itemized causes of action list claims under the First, Eighth, and Fourteenth Amend-

ments. But his factual allegations do not raise any claim under the Eighth Amendment.

He seeks declaratory, injunctive, and monetary relief.

*ANALYSIS*

### A. Standard of Review

#### 1. Dismissal

■ In deciding a motion to dismiss, "the complaint is construed in the light most favorable to plaintiff and its allegations are taken as true." 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 304 (2d Ed.1990). *See also Jenkins v. McKeithen,* 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969); *Westlake v. Lucas,* 537 F.2d 857 (6th Cir.1976). A complaint will not be dismissed for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

#### 2. Summary Judgment

■ Under Fed.R.Civ.P. 56, summary judgment is to be entered if the moving party demonstrates there is no genuine issue as to any material fact. The Supreme Court has interpreted this to mean that summary judgment should be entered if the evidence is such that a reasonable jury could find only for the moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The moving party has "the burden of showing the absence of a genuine issue as to any material fact." *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). *See also Lenz v. Erdmann Corp.,* 773 F.2d 62 (6th Cir.1985). In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.,* 791 F.2d 43, 46 (6th Cir.1986); *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319 (6th Cir.1983). But as the Supreme Court wrote in *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

### B. Retaliation

#### 1. Defendant's Response:

Defendant Kurtz argues that plaintiff has failed to demonstrate that defendant acted with retaliatory intent. Kurtz states that he did not act in retaliation against Riley for plaintiff's exercise of his constitutional rights. Kurtz Aff. at ¶¶ 3, 17. He also states that he did not ever threaten to retaliate against Riley "whenever the opportunity presented itself." *Id.* at ¶ 6. Kurtz also contends that the day room was closed for 15–20 minutes on November 10, 1992, and not for an hour as Riley alleges. *Id.* at ¶¶ 8–9. Defendant states that he did not hear Riley urge other prisoners to write grievances but did hear Riley tell other inmates not to move when ordered to do so. *Id.* at ¶ 9. Kurtz denies threatening Riley with any "undue hardship" in retaliation for plaintiff's seeking disciplinary sanctions against Kurtz, and states that any misconduct charges were "true misconducts written to the best of my ability." *Id.* at ¶¶ 18, 19.

Kurtz has also submitted a copy of the Misconduct Hearing Report noting that plaintiff was found guilty of one of the misconduct charges, failure to disperse. Def. Exh. A–6. The report also states that a crowd of prisoners did converge on the RUM's office, and that a confidential informant observed Riley "organizing the prisoners to approach the [RUM's] office." *Id.* The hearing officer declined to find Riley

guilty of incitement to riot or strike, because "[i]t is not alleged by witness that prisoner told others to remain whether ordered to disperse or not." *Id.*

In his brief supporting this motion, defendant acknowledges that government officials may not retaliate against persons for their exercise of a constitutionally protected right. But he asserts that his actions were not motivated by a desire for retaliation but because of Riley's wrongful actions, some of which Riley was found guilty of at his misconduct hearing. In addition, defendant argues that issuing a misconduct ticket does not amount to conduct that "shocked the conscience," which he contends is necessary to find a substantive due process violation.

### 2. The Legal Standard:

■ "Retaliation ... against the exercise of First Amendment rights is itself a violation of the First Amendment." *Zilich v. Longo,* 34 F.3d 359, 364 (6th Cir.1994)

Defendant acknowledges that *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), stated that a constitutional claim is ordinarily to be analyzed only as a violation of the underlying constitutional right involved (there the Fourth Amendment) and not under the "more generalized notions of substantive due process," referring to the "shocks the conscience" "egregious abuse of government power" standards set

out in *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952) and *Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 201 (6th Cir.1987). Yet, defendant then asserts that case law on prisoner retaliation claims requires the corrections officer's conduct to meet the "shocks the conscience" standard for a constitutional violation to exist, and issuing a misconduct ticket does not meet that standard.

■ Prisoners' First Amendment rights are more limited than those of free citizens.[2] But unless a prison official can demonstrate a legitimate penological justification, he abuses his power if he uses his position to infringe upon the First Amendment rights of inmates, including their right to petition government officials for a redress of grievances.[3]

In *Cale v. Johnson,* 861 F.2d 943 (6th Cir.1988), the Sixth Circuit rejected the proposition that, as long as a prisoner receives procedural due process, his allegation that guards issued him a misconduct ticket in retaliation for filing a grievance does not state a claim for a constitutional violation. Plaintiff Cale, a prison inmate, alleged that a prison official planted marijuana in Cale's pocket in retaliation for Cale's complaints about the prison food. Cale was then subjected to disciplinary proceedings for possession of contraband. In reversing the district court, the Sixth Circuit, citing with approval

---

**2.** *Thornburgh v. Abbott,* 490 U.S. 401, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989); *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974); *O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987); *Turner v. Safley,* 482 U.S. 78, 87–89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Courts have upheld prison bans on publications which advocate racial hatred, *see, e.g., Hernandez v. Estelle,* 788 F.2d 1154 (5th Cir.1986) (upholding censorship of a revolutionary socialist newspaper because of a perceived threat to prison security); *Abernathy v. Cunningham,* 393 F.2d 775 (4th Cir.1968); or which are of a sexually graphic nature, *see, e.g., Kincaid v. Rusk,* 670 F.2d 737 (7th Cir.1982) (upholding ban on pictorial magazines, hardbound books, and newspapers); *Wagner v. Thomas,* 608 F.Supp. 1095 (N.D.Tex.1985) (upholding ban on magazines and books depicting nudity or pandering to sexual interest).

**3.** Prisoner First Amendment claims must be analyzed in the framework of *Pell v. Procunier,* 417

U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974), and *Procunier v. Martinez,* 416 U.S. 396, 94 S.Ct. 1800, 40 L.Ed.2d 224 (1974), *overruled on other grounds by Thornburgh v. Abbott,* 490 U.S. 401, 413–14, 109 S.Ct. 1874, 1881–82, 104 L.Ed.2d 459 (1989). *Wolfel v. Bates,* 707 F.2d 932 (6th Cir.1983). In *Pell,* the Supreme Court explained that "a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell,* 417 U.S. at 822, 94 S.Ct. at 2804. One of the rights guaranteed by the First Amendment is the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. *Pell* establishes that if this right is neither inconsistent with prisoner status nor in conflict with legitimate penological interests, then it is a right which prisoners generally retain. *Martinez* suggests that the right to petition for redress of grievances is in fact retained by prisoners. 416 U.S. at 415–16, 94 S.Ct. at 1812–13.

*Franco v. Kelly,* 854 F.2d 584 (2d Cir.1988), held that summary judgment should not have been granted on this substantive due process claim:

> [T]he evidence supports a claim that Wahl intentionally and maliciously framed Cale and filed disciplinary charges against him in retaliation for Cale's exercise of his first amendment rights. This alleged conduct constitutes an egregious abuse of authority within the meaning of *Vinson [v. Campbell County Fiscal Court,* 820 F.2d 194 (6th Cir.1987)].

861 F.2d at 950.

In *Franco v. Kelly,* 854 F.2d 584 (2d Cir. 1988), the Second Circuit reached a similar conclusion. In that case, the court held that

> Unlike *Freeman [v. Rideout,* 808 F.2d 949 (2d Cir.1986), *rehearing denied,* 826 F.2d 194 (2d Cir.1987), *cert. denied,* 485 U.S. 982, 108 S.Ct. 1273, 99 L.Ed.2d 484 (1988) ], the complaint in the instant case is not one that relies solely on the procedural dictates of the Due Process Clause. Rather, like *Morello [v. James,* 810 F.2d 344 (2d 1987) ], this case involves conduct by prison officials that allegedly infringed on an inmate's substantive constitutional rights. [Plaintiff] claims that prison officials intentionally filed false disciplinary charges against him in retaliation for his cooperation with a state administrative investigation of alleged incidents of inmate abuse at the prison. Although those allegations do not directly implicate [plaintiff's] right of access to the courts or similar judicial forums, we believe that his complaint does implicate his broader right to petition government for redress of grievances, as guaranteed by the First and Fourteenth Amendments.

*Id.* at 589. The Second Circuit concluded,

> Although our decision in *Freeman* accords prison officials wide latitude in disciplining inmates as long as minimum constitutional procedures are employed, . . . that latitude

does not encompass conduct that infringes on an inmate's substantive constitutional rights. "An act taken in retaliation for the exercise of a constitutional right is actionable under [s]ection 1983 even if the act, when taken for different reasons, would have been proper."

*Id.* at 590 (quoting *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir.1987)) (other citations omitted).

A dispute has arisen as to exactly what standard *Cale* established. Some have argued that *Cale* holds that any retaliatory conduct itself must be "egregious" before a prisoner may state a constitutional violation. Defendant cites *Williams v. Smith,* 717 F.Supp. 523 (W.D.Mich.1989), for the proposition that the filing of a disciplinary charge against a person who had earlier brought a grievance does not state a constitutional claim.

In *Williams,* the plaintiff filed a grievance against a corrections officer and sixteen days later a different officer filed a misconduct charge against the inmate for interference with administration of prison rules arising out of the same incident. The court noted that a plaintiff must show "more than the lodging of a misconduct against him after the exercise of his First Amendment rights" and found no "egregious abuse of governmental power" or conduct which "shocks the conscience." *Id.* at 524. In *Williams,* Judge Hillman specifically noted that the person who wrote the misconduct ticket against the inmate was not the prison guard against whom the inmate had earlier filed a grievance. Indeed, defendant Smith was defined as "a passive observer who became involved 16 days after the grievance was filed [against another defendant, Hephner]."[4] Judge Hillman in *Williams* read *Cale* as suggesting that the conduct by which the officer retaliated against the inmate for the inmate's having brought a grievance, had to "shock[ ] the conscience" or constitute a "egregious abuse of authority." 717 F.Supp. at 524. Yet, I

---

4. In the present case, as in *Cale,* the person who took steps to initiate the disciplinary charge against the inmate was the very person about whom the inmate had earlier complained. This fact is obviously of significance in a retaliation claim. In another case citing *Cale* and *Williams,*

*Mayberry v. Spicer,* 808 F.Supp. 563 (E.D.Mich. 1992), the defendant wrote the misconduct ticket prior to plaintiff's filing of a complaint against him, and plaintiff had not alleged adequate facts to show retaliation. *Id.* at 567.

believe that in light of the 1989 *Graham v. Connor* case, and more recent cases in the Sixth Circuit, this portion of the 1988 *Cale* opinion is no longer viable law. While the *Williams* court may have reached the right conclusion on the quantum and type of evidence needed to make out a retaliation claim, I believe that it and *Cale* are wrong if they suggest that the *means* of retaliation must be an "egregious abuse of governmental power" or "shock the conscience."

While I can understand courts' concerns about the rising tide of prisoner litigation consuming enormous judicial and state governmental resources, I fear that we do no good service to respect and allegiance to the rule of law in our society if we devise a double standard of constitutional law for prisoners and for free citizens unless the different standard is justified by "legitimate penological objectives of the corrections system." *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). For reasons noted below, the constitutional analysis of *Cale* and certain of its progeny are fundamentally in conflict with the constitutional analysis of *Graham,* and no legitimate penological objective justifies this difference. I believe the analysis can and should be brought into harmony, and frivolous and *de minimis* prisoners' litigation can be ended by the courts in ways that are consistent with both fairness and efficiency.[5]

The substantive content of the "liberty" provision of the Fourteenth Amendment derives from two sources. First, there are selected rights secured by the Bill of Rights which are made applicable to the states through the Fourteenth Amendment. In selecting which of the Bill of Rights to incorporate in the Fourteenth Amendment due process clause, the Supreme Court has looked either for "principle[s] of justice so rooted in the tradition and conscience of our people as to be ranked as fundamental" and therefore "implicit in the concept of ordered liberty," [6] or for principles that are "basic in our system of jurisprudence." [7] Such incorporated rights limit the permissible *substance* of what a state or state actors can do, regardless of the procedural preconditions that may be set.

In addition to the incorporated rights drawn from the first eight amendments, the substantive content of the Fourteenth Amendment due process clause also prohibits certain state actions which "shock[ ] the conscience" [8] or which constitute "an egregious abuse of governmental power." [9] While many jurists and commentators use the term "substantive due process" to refer to these unenumerated rights, substantive due process actually includes both the incorporated protections of the Bill of Rights and certain additional unenumerated rights.[10]

The Sixth Circuit has highlighted this similar distinction between procedural due pro-

---

5. Certain means of "retaliation" may be so *de minimis* as not to inhibit or punish an inmate's rights of free speech. Many verbal responses by officials of resentment or even ridicule would fall into this safe harbor of permitted response. Borrowing from *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. Employee–Officer John, #1765 Badge Number v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1977), *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989), notes that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. Similarly, not every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment. By developing a standard of *de minimis* actions, courts can screen out frivolous or non-meritorious claims of retaliation during the *in forma pauperis* complaint review under 28

U.S.C. § 1915 or on a motion for summary judgment.

6. *Palko v. Connecticut,* 302 U.S. 319, 325, 58 S.Ct. 149, 152, 82 L.Ed. 288 (1937).

7. *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 507, 92 L.Ed. 682 (1948).

8. *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 209–10, 96 L.Ed. 183 (1952).

9. *Vinson v. Campbell County Fiscal Court,* 820 F.2d 194, 201 (6th Cir.1987).

10. Chief Justice Rehnquist in *Graham v. Connor,* 490 U.S. 386, 395, 109 S.Ct. 1865, 1871, 104 L.Ed.2d 443 (1989), may have added to the confusion over the limited meaning given to the term "substantive due process" when he used the term "the more generalized notion of 'substantive due process'" to refer to a *Rochin/Vinson* type of constitutional protection.

cess and the two sources of substantive due process.

This Court has analyzed section 1983 actions based on deprivations of due process as falling into two categories: violations of procedural due process and violations of substantive due process; the latter being further subdivided into: (1) deprivations of a particular constitutional guarantee and (2) actions that "shock the conscience."

*Mansfield Apartment Owners Ass'n v. City of Mansfield,* 988 F.2d 1469 (6th Cir.1993). *See also Braley v. City of Pontiac,* 906 F.2d 220, 224–25 (6th Cir.1990). In cases such as this one and *Cale,* substantive claims of constitutional violations are found in the specific relevant amendment to the Constitution—the First Amendment.

■ I believe that, in finding a willful violation by a state actor of the guarantees of the incorporated Bill of Rights, a court need not make a separate finding that such action "shocks the conscience" or is an "egregious abuse of governmental power." Willful violations of enumerated constitutional guarantees are constitutional torts and nothing more need be shown. There is, however, disagreement on this issue with regard to its application to prisoners.[11]

In the present case, we are required to assume that plaintiff's allegations are true in considering whether he has asserted an ade-

quate constitutional claim under Rule 12(b)(6). Riley wrote two letters to the warden complaining about wrongdoings of Officer Kurtz. Kurtz threatened Riley with retaliation when "the opportunity presented itself." Later, on November 10, 1992, Riley and others told the Resident Unit Manager about Kurtz being a problem. Kurtz allegedly heard about this and thereafter singled Riley out for major misconduct tickets in retaliation for these complaints. The wrong that plaintiff asserts—Kurtz's use of his government position to limit or punish Riley's exercise of his right to petition the government—lies near the core of the First Amendment.[12] *See Newsom v. Norris,* 888 F.2d 371, 379 (6th Cir.1989), and extensive case authority cited therein ("[D]irect retaliation by the state for having exercised First Amendment freedoms in the past is particularly proscribed by the First Amendment").

■ Because incorporated constitutional guarantees are so fundamental to our concept of liberty, one could say that it is an egregious abuse of government power, *per se,* to punish or threaten to punish by retaliation a citizen's exercise of such express constitutional rights.[13] Yet, it is not clear that this analysis is even necessary.[14] It is only when dealing with one of the unenumerated portions of substantive due process that

---

**11.** *Compare Williams v. Smith,* 717 F.Supp. 523 (W.D.Mich.1989) and *Mayberry v. Spicer,* 808 F.Supp. 563 (E.D.Mich.1992), noted above, (both suggesting that a separate finding that the government conduct "shocks the conscience" is a necessary element of substantive due process violations against prisoners) with *Newsom v. Norris,* 888 F.2d 371, 376–77 (6th Cir.1989) (holding that direct retaliation for a prisoner's exercise of a specifically enumerated constitutional right is in itself a cognizable constitutional tort).

**12.** While the First Amendment protects artistic, commercial, and other speech, the areas of speech concerning dialogue over government policy, government abuse of power, and petitions to the government for a redress of grievances were the core concerns of James Madison and have always commanded the greatest attention and protection by federal courts under the First Amendment.

**13.** In *Newsom v. Norris,* 888 F.2d 371, 376–77 (6th Cir.1989), the majority opinion seems to read *Cale* as equating "retaliation [against a prisoner by prison officials] for exercising his first

amendment right to register a complaint" as constituting the "egregious abuse of governmental power."

**14.** *Cale v. Johnson,* 861 F.2d 943, 949 (6th Cir. 1988), cites *McMaster v. Cabinet for Human Resources,* 824 F.2d 518, 523 (6th Cir.1987), which looked to the "shocks the conscience" test of *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), to measure the constitutional invalidity of a state action "at least where plaintiffs can point to no other invidious reason for their dismissal [the challenged misconduct], such as race or political beliefs or other status or *conduct protected by the Constitution* or federal statutes." *Cale,* 861 F.2d at 949 (emphasis supplied). This clearly suggests that where the challenged government action is motivated by an invidious reason, such as retaliating for "conduct protected by the Constitution," this alone sufficiently states a claim of a substantive constitutional violation without any additional need to do a "shocks the conscience" analysis.

some *plus factor*, such as "shocks the conscience," is required to define the conduct as a constitutional tort.

The two-judge majority opinion in *Cale* appears to have merged the "shocks the conscience" standard of Fourteenth Amendment case law into the First Amendment retaliation analysis because the prison official's conduct in that case involved both.[15] In light of the more recent Supreme Court decision in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), I am confident that the Sixth Circuit in another case involving a prison guard's intentional infringement of an inmate's First Amendment rights by some retaliatory act or threats would, like *Newsom*, allow the finding of a constitutional tort without the need for a separate instruction, in a jury trial, or a separate finding, in a bench trial, that this behavior also either "shocks the conscience" or is an "egregious abuse of governmental power." [16]

It is only in a case where an incorporated right, such as a First Amendment right, is not available to give substantive content to the Fourteenth Amendment that the trial court must find government action so outrageous as to "shock the conscience" or be an "egregious abuse of governmental power." Where the intent of the authors of the Constitution is found in a specific provision of the Bill of Rights, the legal standard of that amendment, not the different and possibly

15. This is why *Cale* has been interpreted as requiring both retaliation and a "shocks the conscience"/"egregious abuse" finding. *See Williams v. Smith*, 717 F.Supp. 523 (W.D.Mich. 1989).

16. While defendant in his brief acknowledges that *Graham* states that the court should look to the underlying text of the specific enumerated right involved in determining the contours of substantive due process, he then cites *Vasquez v. Hamtramck*, 757 F.2d 771 (6th Cir.1985), and *Dunn v. Tennessee*, 697 F.2d 121, 125 (6th Cir. 1982), for the proposition that various governmental malicious acts by state actors do not constitute substantive due process violations. *Vasquez* involved police officers who had wrongfully issued parking tickets to the plaintiff for fictitious offenses that occurred in a jurisdiction where plaintiff had not been. The Sixth Circuit noted that the conduct of the officers was "reprehensible," yet it concluded that "it was not the type of conduct which so 'shocks the conscience' that it violates appellant's substantive due process rights." 757 F.2d at 773.

Yet in *Vasquez*, unlike the present case, the harassing action of the government actors was *not* done in retaliation for the plaintiff's exercise of any constitutional right. Plaintiff did not have the tickets written against him because he exercised some First Amendment right or asserted some Fourth Amendment right to be free from an unreasonable search or seizure. Thus, in evaluating whether the action arose to the level of a constitutional tort, the Sixth Circuit could not look to the case law interpreting any of the first eight amendment to the Constitution, but rather was left solely with the "shocks the conscience," "egregious abuse of government power" standard to determine whether a Fourteenth Amendment violation had occurred. The behavior of the police officers in *Vasquez* was not deemed to be of a sufficient wrongful magnitude to meet that standard. Yet, for reasons noted in the text above, where the action is taken in retaliation for a person's exercise of a constitutionally protected right, a constitutional tort can occur even though the means or method of retaliation does not shock the conscience. Indeed, the means or method of retaliation can be actionable under § 1983 when done in retaliation for the exercise of a constitutional right even if it was otherwise a permissible and legal action.

The other case, *Dunn v. State of Tennessee*, does state, as defendant asserts, that "neither the Fourteenth Amendment nor § 1983 were designed to redress all injuries incurred by reason of unfounded or malicious claims brought in state court actions." *Dunn*, 697 F.2d at 125. Yet, where the police officers' action in bringing criminal charges against the plaintiff were brought "because [the plaintiff] attempted to exercise [his Fourth Amendment rights to be free of having his house illegally entered]," the Sixth Circuit in *Dunn* unequivocally held that such action did violate the Fourth Amendment as incorporated in the Fourteenth Amendment. In that case, the police had come to the Dunn's home with an arrest warrant for his son. Dunn told them that his son was not there and Dunn blocked their entry to the house. "The two officers forced entry, searched unsuccessfully for Dunn's son, and arrested Dunn for 'interfering with the duty of a police officer.'" 697 F.2d at 124. Thus, in *Dunn*, a constitutional tort was found where the police activity was done because the plaintiff attempted to assert a constitution right. The *Dunn* court held:

> In our view, the complaint can fairly be interpreted to allege that the defendants Willie and Hight, acting under color of law, deprived plaintiff of his constitutional right under the Fourth Amendment, as incorporated in the Fourteenth Amendment, to be free of unreasonable searches and seizures. They did so by arresting and prosecuting him because he attempted to exercise that right.

higher *Rochin/Vinson* type standard of the Fourteenth Amendment, are used to measure the unconstitutionality of the act. This was the core of Chief Justice Rehnquist's message in *Graham v. Connor.* Yet it is the jurisprudence defendant seeks to avoid in this case by citing *Cale.*

*Graham* was a case involving the use of excessive force by police. It was decided the year after *Cale.* *Graham* made it clear that because a specific amendment—the Fourth Amendment—was applicable to the challenged misconduct, the objective "reasonableness" standard, and not the "maliciously and sadistically" [17] "substantive due process" standard, should be used to evaluate whether the state actor violated plaintiff's constitutional rights. The present case alleges a violation of the First Amendment rather than the Fourth Amendment, as in *Graham.* Yet, the words of Chief Justice Rehnquist in *Graham* apply with equal force:

> Because the [First] Amendment provides an explicit textual source of constitutional protection against this sort of [retaliatory] governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

490 U.S. at 395, 109 S.Ct. at 1871. *Newsom v. Norris,* 888 F.2d 371 (6th Cir.1989), analyzes a state prisoner's retaliation claim as a simple First Amendment question and not a Fourteenth Amendment "substantive due process" question.[18] The Sixth Circuit, in *Braley v. City of Pontiac,* 906 F.2d 220, 226 (6th Cir.1990), reasoned that the "shocks the conscience" standard, fuzzy under the best of

circumstances, should be narrowed to "the realm of physical abuse, an area in which the consciences of judges are shocked with some degree of uniformity." It noted that the Supreme Court in *Graham* believed that "where available, explicit constitutional guarantees (e.g., protection against unreasonable seizures) offer a more concrete, and therefore superior, guide to judges than intuitive standards such as 'behavior that shocks the conscience.'" *Braley* notes that under Sixth Circuit case law, police conduct (such as malicious prosecution) that is wrongful under state common law does not constitute a constitutional tort under § 1983 unless it is undertaken against an individual who is asserting a specific constitutional right such as the Fourth Amendment right to resist an illegal search. *Compare Dunn v. Tennessee,* 697 F.2d 121 (6th Cir.1982), *cert. denied sub nom. Wyllie v. Dunn,* 460 U.S. 1086, 103 S.Ct. 1778, 76 L.Ed.2d 349 (1983), with *McMaster v. Cabinet for Human Resources,* 824 F.2d 518 (6th Cir.1987).

As noted above, *Zilich v. Longo,* 34 F.3d 359, 364 (6th Cir.1994), held that "[r]etaliation ... against the exercise of First Amendment rights is itself a violation of the First Amendment." In *Zilich,* the Sixth Circuit made no assertion that the retaliatory act must "shock the conscience" or be an "egregious abuse of governmental power," although the facts in *Zilich* would have supported such a finding. Other courts have made it clear that an act in retaliation for the exercise of a constitutionally protected right is actionable under § 1983 even if the act, when taken for a different reason, would have been proper. *See Franco v. Kelly,* 854

---

697 F.2d at 126.

**17.** As noted by the Supreme Court in *Graham,* this was the substantive due process standard that Judge Friendly derived from his use of *Rochin v. California,* 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952), in *Johnson v. Glick,* 481 F.2d 1028 (2d Cir.), *cert. denied sub nom. Employee-Officer John, #1765 Badge Number v. Johnson,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

**18.** Judge Lawrence Zatkoff dissented in *Newsom* on the jurisdictional question of whether the majority should reach the First Amendment issue because it had not been addressed by the district court. Judge Zatkoff did not express any dis-

agreement on the interpretation of the First Amendment law being applied by the majority.

It is also interesting in *Newsom* that the entire panel found the Commissioner of the Tennessee Department of Corrections was legally entitled to remove inmate Newsom from his position as an inmate advisor and to not reinstate him to that position. The majority of the Court, however, found that these otherwise legal acts could not be undertaken if done in retaliation for Newsom's exercise of a First Amendment right. Thus, it cannot be said that the *manner* in which the district court found Newsom's First Amendment rights were violated was a behavior that "shocked the conscience" because the means by which the violation occurred was an otherwise permissible act.

F.2d 584, 590 (2d Cir.1988), and *Howland v. Kilquist,* 833 F.2d 639, 644 (7th Cir.1987), both cited above; *Madewell v. Roberts,* 909 F.2d 1203, 1206 (8th Cir.1990). *See also Sprouse v. Babcock,* 870 F.2d 450, 452 (8th Cir.1989) (disciplinary action cannot be brought against a prisoner for filing grievances that were determined to be meritless); *Wright v. Newsome,* 795 F.2d 964, 968 (11th Cir.1986) (*per curiam*) (otherwise constitutional action, such as searching an inmate's cell or confiscating nonlegal materials, when taken in retaliation for filing lawsuits, violate inmates' right of access to the courts and First Amendment rights); *Sanders v. St. Louis County,* 724 F.2d 665, 666 (8th Cir. 1983) (*per curiam*) (prison officials may not impede access to the courts through retaliation, such as harassment or less favorable treatment, for inmates' litigation activities).

■ In his motion, defendant cites *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977). In *Mount Healthy,* the Supreme Court stated a two step test for cases of alleged retaliation for the exercise of First Amendment rights. First, plaintiff must show that his conduct was constitutionally protected. Second, he must show that the protected conduct was a substantial or motivating factor in the allegedly retaliatory conduct. Once a plaintiff establishes this *prima facie* case of retaliation, the burden shifts to the defendant to show by a preponderance of the evidence that he would have taken the same action even if plaintiff had not engaged in the constitutionally protected conduct.

■ Plaintiff has clearly passed the first step of the *Mount Healthy* test. Accepting as true Riley's allegations that he filed, or threatened to file, complaints against Kurtz with appropriate government bodies, *e.g.,* the prison administration or the courts, Riley clearly engaged in activity that is protected by the First Amendment. Plaintiff's allega-

tions also indicate that Kurtz threatened him with retaliation prior to November 10, 1992, when the ticket was given shortly after a prisoner protest about Kurtz. Thus, accepting plaintiff's allegations as true and construing all ambiguities in the complaint in favor of plaintiff, as this Court must do for purposes of this motion, plaintiff has established a *prima facie* case of retaliation.

■ In the present case, plaintiff Riley prevailed on one of his disciplinary proceedings but was found guilty on the other. Defendant Kurtz notes that in *Cale* the plaintiff was found not guilty at his disciplinary hearing. Kurtz argues that because Riley was found guilty of his charge, "obviously, that charge was not false, as alleged by Plaintiff" (Def. brief at p. 9).

While the common law made dismissal of the criminal charges a prerequisite to a claim of malicious prosecution,[19] it does not follow that the federal courts should make a "no cause" in a disciplinary action a precondition to a § 1983 claim for retaliation. Nor should federal courts be bound by the factual determinations of a Department of Corrections hearing officer. The standard of guilty beyond a reasonable doubt used in a criminal proceeding is higher than the standard of proof used by the Department of Corrections in disciplinary hearings. Of greater significance, defendants in criminal cases are cloaked with substantial procedural protections (including a prohibition on the use of hearsay statements by confidential informants), most of which are not applicable in a prison disciplinary proceeding. Finally, as a policy matter, if dismissal of the disciplinary action was a precondition to a § 1983 case, there would be unwarranted pressure on the hearing officers of the MDOC not to dismiss cases and disciplinary claims that they believe are marginal for fear that a § 1983 action may follow against the corrections officers involved. While it may be an attractive convenience to have federal courts defer to the factual determinations of the hearing offi-

---

**19.** While at common law, a party could not bring an action for malicious prosecution until there had been a termination of the underlying criminal prosecution in favor of the accused, *Restatement Second of Torts,* § 658 (1977), similar success by the plaintiff on the underlying charge is

not a precondition or a *prima facie* element of a § 1983 cause of action based upon a constitutional claim and not on malicious prosecution. *See, e.g., Rinehart v. Locke,* 454 F.2d 313, 315 (7th Cir.1971).

cer of the Department of Corrections, I do not believe that this was the intent of Congress in adopting 42 U.S.C. § 1983.[20]

C. *Interference with Plaintiff's Legal Mail*

Plaintiff also claims that his legal mail was "censored," and that defendant improperly read his legal mail. These allegations raise claims under the First Amendment.

*1. Censorship*

■■■ The only specific facts alleged by plaintiff in this regard are that defendant read his incoming legal mail. He has not identified a single incident in which his mail was in any way censored. Although *pro se* complaints are to be construed liberally, *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), it is also well established that conclusory, unsupported allegations of constitutional deprivation do not state a claim.[21]

*2. Reading Legal Mail*

■■■ Plaintiff also alleges that defendant opened and read his confidential legal correspondence. Defendant argues that this claim is conclusory and that, even if it is not conclusory, it fails to state a claim upon which relief can be granted.

The complaint specifically states that defendant "read plaintiff's legal correspondence from the federal courts[ ] regarding a lawsuit involving Captain Stevens." Complaint at ¶ 7. This allegation is not conclusory. It specifically states that defendant performed a particular action which in and of itself violates plaintiff's constitutional rights. This is significantly different than, for example, the blanket allegation discussed above that defendant "censored" plaintiff's legal mail. Whereas plaintiff has failed to identify any act that could be understood to constitute censorship, he has clearly stated that defendant read mail sent by a federal court to plaintiff in regard to a particular case. This is not conclusory.

Defendant also argues that a prisoner's incoming mail may be checked for contraband. Checking mail for contraband does not require reading the mail.

MDOC policy directive DWA–61.01 states, in part: "A prisoner shall ... have the right to carry on *confidential* and uncensored correspondence with ... the courts...." (emphasis added). While opening such mail to check for contraband may well be permissible, reading such mail clearly violates the right to confidentiality of legal mail guaranteed by PD–DWA–61.01. *Parrish v. Johnson*, 800 F.2d 600 (6th Cir.1986), cited by

---

20. Congress provided a federal forum in 42 U.S.C. § 1983 because of skepticism about the legislative enactments and judicial powers in various southern states that had undermined the constitutional rights of African–American citizens. Discriminatory enforcement and prejudicial outcomes plagued black minorities under facially neutral state legislation and in state court determinations. Congress in passing § 1983 did not intend to defer to such state procedures and state outcomes. Rather the civil rights laws sought to preempt, counter, and eliminate such wrongs. I do not believe Congress intended federal courts in enforcing federal law in state prisons to be bound by the fact-findings of disciplinary hearing officers.

21. *See, e.g., Ana Leon T. v. Federal Reserve Bank*, 823 F.2d 928, 930 (6th Cir.) ("[T]he allegations must be more than mere conclusions, or they will not be sufficient to state a civil rights claim."), *cert. denied*, 484 U.S. 945, 108 S.Ct. 333, 98 L.Ed.2d 360 (1987); *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986) ("It is not enough for a complaint ... to contain mere conclusory allegations of unconstitutional con-

duct by persons acting under color of state law. Some factual basis for such claims must be set forth in the pleadings."); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir.1985) (conclusory, unsupported allegations insufficient to state a claim); *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983) (dismissal of complaint appropriate if allegations of constitutional deprivation are "mere conclusions"); *Ross v. Meagan*, 638 F.2d 646, 650 (3d Cir.1981) ("[T]his court has consistently demanded that a civil rights complaint contain a modicum of factual specificity, identifying the particular conduct of defendants that is alleged to have harmed the plaintiffs."); *Place v. Shepherd*, 446 F.2d 1239, 1244 (6th Cir.1971) ("A pleading will not be sufficient to state a cause of action under the Civil Rights Act if its allegations are but conclusions."); *Borenstein v. City of Philadelphia*, 595 F.Supp. 853, 856 (E.D.Pa.1984) ("[C]ivil rights complaints must be pleaded with specificity and may not merely make conclusory allegations of constitutional deprivations or the existence of municipal policies."); *Egan v. Concini*, 585 F.Supp. 801, 803 (M.D.Pa.1984) (factual specificity required in order to enable court to evaluate substance of claim).

defendant, does not require a different conclusion.

*Parrish* was a case involving personal, not legal mail. There is no holding in that case that is relevant to reading of legal mail by a prison official. Yet, the *Parrish* court cited cases from four other circuits holding that "mail relating to a prisoner's legal matters may not be read...." 800 F.2d at 604. It is also well settled that a prisoner's right to receive mail is protected by the First Amendment. *See Muhammad v. Pitcher,* 35 F.3d 1081, 1084–85 (6th Cir.1994); *Knop v. Johnson,* 977 F.2d 996, 1012 (6th Cir.1992); *Parrish, supra.* Thus, accepting plaintiff's allegations as true for purposes of this motion, plaintiff has stated a claim of denial of his First Amendment rights to receive mail and of access to the courts, and, possibly, of a constitutionally protected liberty interest in the confidentiality of his legal mail given the "explicit"[22] and "unmistakably mandatory character"[23] of PD–DWA 61.01's right of a prisoner to confidential correspondence with the courts.

▬ Defendant is also not entitled to summary judgment at this time. Defendant has submitted an affidavit stating that he "did not read any confidential legal correspondence from the federal courts." Kurtz Aff. at ¶ 5. Plaintiff has submitted only hearsay evidence to rebut defendant's sworn assertion. Affidavit of Jerry M. Weber at ¶ 7. But a stay of discovery was requested by defendant on the clearly legitimate grounds that he has asserted a qualified immunity defense. Plaintiff has not sought to compel outstanding requests or to pursue other discovery since this motion to stay discovery was filed. While I recommend against finding defendant entitled to qualified immunity in this case, I have granted defendant's motion, and I have entered an order staying discovery pending final resolution of the qualified immunity issue.

In resolving a summary judgment motion, the Court must view the evidence in the light most favorable to the non-moving party. *See Duchon v. Cajon Co.,* 791 F.2d 43, 46 (6th Cir.1986); *Bouldis v. U.S. Suzuki Motor Corp.,* 711 F.2d 1319 (6th Cir.1983). But, as noted above, the Supreme Court wrote in *Celotex Corp. v. Catrett:*

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, *after adequate time for discovery* and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986) (emphasis added). While the only evidence on the record indicates that defendant never read plaintiff's legal mail, the time for discovery is deferred until defendant's qualified immunity motion is resolved. Therefore, summary judgment on this issue is inappropriate at this time. Obviously, if the discovery stay is lifted and plaintiff comes up with no better proofs than now exist, a renewed summary judgment or directed verdict motion should be granted for the defendant on this claim.

### D. *Qualified Immunity*

Defendant also contends that he is entitled to qualified immunity. Because defendant is entitled to dismissal of plaintiff's censorship claim, this defense will be analyzed only as it relates to plaintiff's other claims.

▬ The key issue in analyzing a claim of qualified immunity is whether the defendant's alleged conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Davis v. Scherer,* 468 U.S. 183, 197, 104 S.Ct. 3012, 3021, 82 L.Ed.2d 139 (1984) ("A plaintiff who seeks damages for violation of constitutional or statutory rights may overcome the defendant official's qualified immunity only by showing that those rights were clearly established at the time of the conduct at issue."). *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97

---

**22.** *Hewitt v. Helms,* 459 U.S. 460, 471–72, 103 S.Ct. 864, 871–72, 74 L.Ed.2d 675 (1983).

**23.** *Parate v. Isibor,* 868 F.2d 821, 832 (6th Cir. 1989).

L.Ed.2d 523 (1987), explained what is necessary for the law to be "clearly established:"

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

(Citations omitted).

 *Zilich v. Longo, supra,* shows that the prohibition against retaliation for the exercise of a constitutional right was clearly established law by the time the incident in this case occurred. *Zilich* found that the constitutional prohibition on retaliation for the exercise of First Amendment rights was clearly established by 1991, when the incidents in that case occurred. "The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional...." *Zilich,* 34 F.3d at 365 (6th Cir.1994). The alleged incident in this case occurred in 1993. Thus, under binding Sixth Circuit precedent, the law regarding retaliation was clearly established for over a year before defendant's actions in this case, and defendant is not entitled to qualified immunity on this claim.[24] While courts may continue to struggle with exactly what factual patterns must be alleged or proven in a prison context to establish a First Amendment retaliation violation, it is clearly established that prison officials cannot impose or threaten imposition of significant harm or risk of harm on a prisoner in retaliation for that prisoner's exercise of a First Amendment right, whether the inmate seeks a redress of grievances by filing a court action, an official grievance, or even an informal complaint.[25]

 It is also clearly established that prison officials may not interfere with inmate court mail without a valid justification for doing so. The Sixth Circuit held in 1986 that prison officials must "put forth legitimate reasons for interfering with a prisoner's incoming mail." *Parrish v. Johnson,* 800 F.2d at 604. The *Parrish* court identified factors such as maintaining security as a legitimate reason. In this case the mail with which defendant allegedly interfered was from the United States District Court. Defendant cannot have had any legitimate concern that the letter contained any information that presented a legitimate threat to institutional security or that there was any other legitimate reason for reading the correspondence. Therefore, defendant is not entitled to qualified immunity on this claim.

### RECOMMENDATION

For the reasons stated above, it is recommended that defendant's motion to dismiss be granted as to plaintiff's claim that his mail was censored, and that defendant's motion to dismiss and/or for summary judgment be denied as to all other claims.

Any objections to this Report and Recommendation must be filed within ten (10) days of its service. 28 U.S.C. § 636(b)(1); E.D.Mich. LR 72.1(d)(2). Failure to file objections within the specified time constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Ivey v. Wilson,* 832 F.2d 950, 957–58 (6th Cir.1987); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

Dated: Feb. 28, 1995

---

24. In other cases, prior to the recent *Zilich* case, I have recommended a finding of qualified immunity in retaliation cases on the basis of the conflicting district court interpretations of *Cale* noted above. *See, e.g. Mayberry v. Spicer, supra,* and *Williams v. Smith, supra.* But *Zilich* has now clarified that my findings of qualified immunity in those cases were in error.

25. It is also significant that the Sixth Circuit in *Gibbs v. Hopkins,* 10 F.3d 373, 378 (6th Cir. 1993), which dealt with an inmate's damages action over 1991 prison official conduct, held that where legal assistance is not otherwise available at a corrections facility, the First Amendment right to access to the courts prohibited officials from retaliating against a "jailhouse lawyer" inmate for his providing legal assistance to other inmates.