**Jimmie Lee RILEY, Plaintiff,**

v.

**"John Doe" COUTU, Property Room Officer, Defendant.**

**Civil Action No. 93–CV–40515–FL.**

United States District Court, E.D. Michigan, Southern Division – Flint.

April 11, 1997.

pursued a claim under the First Amendment.

Jimmie Lee Riley, G. Robert Cotton Correctional Facility, Jackson, MI, for Plaintiff.

Donald J. Allen, Jr., Asst. Atty. Gen., Corrections Division, Lansing, MI, for Defendant.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, Senior District Judge.

### I. Background

On July 16, 1993, defendant Leo Coutu filed his first motion to dismiss or for summary judgment in this case. That motion was fully briefed and a Report and Recommendation was entered by Magistrate Judge Marc L. Goldman on March 8, 1994. In his Report, the Magistrate Judge addressed whether prisoner-plaintiff Jimmie Lee Riley's civil rights claims could withstand dismissal or summary judgment under Fed. R.Civ.P. 12(b)(6) and 56(c). The Magistrate Judge summarized the facts of the case as follows:

> This is a prisoner civil rights action brought pursuant to 42 U.S.C. § 1983. Plaintiff is a prisoner of the Michigan Department of Corrections [MDOC] and is currently incarcerated at the Hiawatha Temporary facility at Kinchloe, Michigan. The defendant, Leo Coutu, is employed by the Michigan Department of Corrections as a corrections officer at the G. Robert Cotton Correctional facility at Jackson, Michigan [JCF]. The defendant is sued in both his official and personal capacity.
>
> The incident giving rise to this complaint began on March 15, 1993. On that date, the plaintiff was transferred from the Chippewa Regional Facility [URF] to JCF.

He brought with him two foot lockers and two duffel bags. On March 16, 1993, the defendant, who was working in the property room at JCF, called plaintiff out to inventory and issue the property that plaintiff had brought with him. According to plaintiff, the defendant immediately began harassing and verbally abusing him for his litigious conduct against various prison officials. Plaintiff alleges that the defendant then broke one of his footlockers and seized legal papers from a duffle [sic] bag. Those papers were allegedly destroyed by defendant. Plaintiff claims that the defendant then broke his other footlocker, while continually threatening and taunting plaintiff because of his involvement in litigation against prison officials.

Plaintiff alleges that the defendant then demanded that he sign a document acknowledging that he received all of his property. When plaintiff refused to do so, the defendant allegedly threatened to have all of plaintiffs [sic] property destroyed. He then took more of plaintiff's legal documents and threw them in the trash container. The defendant allegedly also destroyed more of plaintiff's legal documents and files by ripping them up. Plaintiff claims that he was never given his legal documents while at JCF and upon his transfer back to URF a few days later, most of his legal property was missing.

Plaintiff claims that the defendant destroyed papers and documents that he needed for pending litigation. He alleges that he had motions, answers, objections and amendments in various cases that he was required to file and that he was unable to do so because his legal documents were destroyed. He also claims that he was unable to file appeals of certain cases because of the destruction of his files. Plaintiff claims that the defendant's conduct in destroying his legal papers violated his first amendment right of access to the courts and to be free from retaliation for constitutionally- protected [sic] activity. . . .

Report and Recommendation ("R & R") of March 8, 1994 (D.E.# 24) (footnote omitted).

The Magistrate Judge found that plaintiff had "asserted facts showing that defendant

did destroy his legal documents, that he was prejudiced by that destruction and that the destruction was retaliatory in nature. By doing so, he has established genuine issues of material fact which must be resolved by trial." March 8, 1994 R & R at 8–9. The Magistrate Judge recommended that defendant's motion to dismiss and for summary judgment on the First Amendment claims be denied.

Defendant filed objections to the R & R, and, after consideration thereof, District Judge Nancy G. Edmunds entered an order Accepting and Adopting the Report and Recommendation in its entirety (D.E.# 38). Defendant did not move for reconsideration of that order.

Discovery proceeded and the deadline for filing pretrial motions passed on October 29, 1994. Thereafter, this case suffered a considerable delay, with a series of transfers between district judges culminating in its assignment to my docket. On September 11, 1996, a telephone conference was conducted in order to determine the status of the case and whether the parties were prepared for trial. During that conference, defendant requested, and the Court granted, leave to file a dispositive motion based upon a change in the case law since adjudication of defendant's original motion in 1994. Thereafter, on September 26, 1996, defendant filed his second motion to dismiss and for summary judgment.

On February 18, 1997, the Court entered a Memorandum Opinion and Order which denied defendant's second motion to dismiss and for summary judgment and ordered defendant's counsel to show cause why the motion was not filed in violation of Fed. R.Civ.P. 11.[1] On February 27, 1997, defendant filed his response, to which plaintiff filed a reply on March 7, 1997.[2] After consideration of defendant's response and plaintiff's reply, as well as a review of the court file and relevant case law, the Court has decided not to impose sanctions in this instance. The Court also has considered whether defendant's response, if construed as a motion for reconsideration, would merit alteration of the February 18, 1997 Order. As the original motion would be denied in any event, reconsideration also is unwarranted. *See* E.D. Mich. LR 7.1(h)(3).

## II. *Discussion*

There were three main issues which precipitated the Court's show cause order. First, it appeared from the face of the motion, in light of the history of this action as presented by the court file, that defendant improvidently sought to have the Court reconsider a ruling previously made by the Magistrate Judge and accepted by Judge Edmunds in 1994. Second, from the case law relied upon by defendant in his motion,[3] it appeared that defendant's First Amendment retaliation argument was based on a fanciful extension of the existing First Amendment case law. Third, in both these instances, defendant went far beyond the scope of leave granted him by the Court which was limited to seeking summary judgment based upon a change in the case law.

### A. *Reargument of Access-to-the-Courts Claim*

#### 1. *Argument not Based on New Law*

The Court is still of the opinion that defendant went beyond the scope of arguing for summary judgment regarding a change in the case law with regard to the first issue, whether plaintiff had evidence of "actual prejudice" in his access-to-the-courts claim. The requirement under such a claim that a plaintiff show actual prejudice in pending litigation was not altered by the Supreme Court's recent ruling in *Lewis v. Casey,* —— U.S. ——, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), but has long been the legal rule fol-

---

1. A copy of the February 18, 1997 Order is attached as Appendix A to this Opinion.

2. The Court notes that the relevant court rules do not entitle plaintiff to file a response. *See* Fed. R.Civ.P. 11(c)(1)(B); E.D. Mich. LR 7.1(h)(2).

3. Two of the three cases upon which defendant relied in support of his First Amendment retaliation argument were unpublished opinions, copies of which defendant failed to provide to the Court in contravention of Sixth Circuit Rule 24(c). Thus, the Court did not consider these cases in its opinion.

lowed in the Sixth Circuit[4] and was in fact applied by the Magistrate Judge in his.march 8, 1994 Report and Recommendation. This finding is explained in the February 18, 1997 Order and need not be repeated here. *See* February 18, 1997 Order at 1–5.

■■■ Defendant's response to the show cause order does not explain why defendant thought that *Lewis* effected a change in the relevant case law. Rather, defendant contends that the issue raised and the arguments made were not part of the original motion and, although part of defendant's objections to the R & R, were not considered by Judge Edmunds in her order accepting the R & R. While the Court accepts this explanation as demonstrating defendant's good faith in arguing the issue,[5] the response is irrelevant to the Court's finding that the motion was not based upon new law. The fact that defendant could make the exact argument in his second motion as he did in his objections to the 1994 R & R indicates that it was not based on a change in the law.[6] Moreover, to the extent that defendant felt Judge Edmunds was wrong in accepting the R & R, or that she failed to address adequately defendant's objections, defendant should have filed a timely motion for reconsideration. The time for such relief has long since passed. E.D. Mich. LR 7.1(h)(1).

### 2. *Reargument of Issue Improper*

In its Order to show Cause, the Court found that defendant improperly misused his leave to file a motion based on new law by rearguing an issue which was previously addressed by the Magistrate Judge and accepted by the District Judge over defendant's objections. Defendant's response is twofold. First, defendant argues that because defendant's original motion did not raise the issue of absence of actual injury, the issue had not been previously argued and rejected. Moreover, defendant argues that Judge Edmunds apparently did not consider defendant's ob-

jections to the R & R and so the argument made in the objections was not adjudicated. Second, because the "law of the case" doctrine is a discretionary one, defendant argues that it would not be improper for him to contest an issue previously denied by the court, unless done in bad faith.

#### a.

In his first argument, defendant emphasizes that while the Magistrate Judge acknowledged the existence of an actual injury requirement, he did not identify the actual injury in his R & R. Significantly, this was defendant's very objection to that finding in the R & R. The Court finds this argument unpersuasive.

Initially, the Court notes that the Magistrate Judge considered the evidence presented to him in the motion and plaintiff's verified response as well as plaintiff's verified complaint. The Magistrate Judge reported that plaintiff had:

> asserted facts showing that defendant did destroy his legal documents, that he was prejudiced by that destruction and that the destruction was retaliatory in nature. By doing so, he has established genuine issues of material fact which must be resolved by trial.

March 8, 1994 R & R at 8–9. As defendant indicates, he objected to this finding in the R & R and argued that plaintiff had not proven actual injury in pending litigation. The R & R was entered on March 8, 1994. Defendant's objections were filed on April 15, 1994 to which plaintiff filed a reply on April 22, 1994. On July 21, 1994, Judge Edmunds accepted the R & R "[b]eing fully advised in the premises and *having reviewed the record and the pleadings,* including Plaintiff's Objections .... " (emphasis added). Defendant argues that Judge Edmunds' order does not demonstrate Defendant's objections were considered by the Court when it accepted the Magistrate's Report and Recommendation. The Court disagrees.

---

4. *See Walker v. Mintzes,* 771 F.2d 920, 931–32 (6th Cir.1985).

5. The Court also questioned the propriety of defendant's reargument of an issue previously adjudicated. This issue is addressed *infra.*

6. *See* February 18, 1997 Order at 3–5 (discussion of access-to-the-courts issue).

■ First, the order indicates a review of "the record and the pleadings, *including* Plaintiff's Objections." The language is inclusive, not exclusive, and does not demonstrate that defendant's objections were not considered. To the contrary, such language indicates that the entire record *was* considered. Second, the Court takes judicial notice that in most prisoner cases which are referred to a magistrate judge for a report and recommendation, the result is favorable to the defendants and the plaintiff is the party who files objections. Thus, the common order accepting such an R & R indicates review of the plaintiff's objections. In this case, as plaintiff filed no objections, the most likely conclusion is that the order contains a typographical error and erroneously refers to "Plaintiff's Objections" instead of "Defendant's Objections." It is unlikely that Judge Edmunds would have reviewed the pleadings and missed defendant's objections—the only objections filed—which were filed well before entry of the order accepting the R & R.

Furthermore, the Court notes that Judge Edmunds did accept and adopt the R & R in its entirety. Thus, the Magistrate Judge's conclusion that plaintiff had proffered sufficient evidence of actual injury became the opinion of the court and the law of the case. Defendant, having recently objected that the finding was not specific, could have—and was required to—move fore reconsideration at that time. *See* E.D. Mich. LR 7.1(h)(1) (10 day limit to file motion for rehearing or reconsideration) Defendant's failure to do so prevented a more detailed and timely disposition of the issue.

**b.**

■ Regarding defendant's second argument, to the extent that defendant believes he can move for summary judgment on an issue repeatedly, without leave of court, defendant is mistaken. It is true that the "law of the case" doctrine is an amorphous concept, and whether a district court decides that a prior disposition is erroneous and would work a manifest injustice and should, therefore, be reconsidered is a matter of discretion. *Cale v. Johnson,* 861 F.2d 943, 947 (6th Cir.1988). This principal does not, however, require a district court to revisit an issue already adjudicated nor does it grant leave for a litigant to argue *carte blanche,* without regard. to whether an issue has been previously adjudicated in the particular case. In fact, as an officer of the court, all attorneys appearing at bar have a duty to respect prior rulings and to notify the court and their opponents when they are seeking reconsideration of a previously-made ruling.

■ In the present matter, defendant did not request to reopen any issue nor did defendant indicate that was his intention. To argue an issue that already had been decided without first seeking leave of the Court to do so was wrong. Moreover, the leave requested by and granted to defendant was to file a motion based on a change in the case law. This was not an invitation to reopen a previously adjudicated issue nor to make a new argument that could have been made earlier, before the motion filing deadline had passed. The fact is, the law in this circuit is long settled that a claim for denial of access to the courts requires a showing of actual prejudice in pending litigation. Defendant either argued this issue previously or failed to do so and, as explained in the February 18, 1997 Order, argument at this time was improper and without leave of court.

### B. *§ 1983 First Amendment Retaliation Claim*

■ With regard to the retaliation claim, the Court admits that defendant was not frivolous in applying a substantive due process analysis. Various unpublished Sixth Circuit opinions and several district court opinions have expressed this view in reliance upon *Cale v. Johnson,* 861 F.2d 943 (6th Cir.1988). Had defendant attached the unpublished opinions upon which he relied, the Court might have avoided making this erroneous finding. Nevertheless, upon a review of the case law and reconsideration of the issue, the Court holds that in a § 1983 action claiming deprivation of a prisoner-plaintiff's First Amendment rights through retaliation, *Cale* does not require proof that the alleged retaliatory conduct was itself "conscience-shocking" or "an egregious abuse of govern-

mental power."[7] To the contrary, the Court finds that *Cale* and its progeny fail adequately to set forth a change in the requirements of First Amendment retaliation claims filed by prisoners.

In rejecting defendant's position regarding the First Amendment retaliation claim, the Court finds persuasive the opinion expressed by Magistrate Judge Steven D. Pepe in the case of *Riley v. Kurtz*, 893 F.Supp. 709 (E.D.Mich.1995). *Kurtz* involved a prisoner's § 1983 action against a Michigan Department of Corrections officer alleging retaliation by that officer for the plaintiff's exercise of his First Amendment rights.. The defendant's motion to dismiss or for summary judgment was referred to Magistrate Judge Pepe for a report and recommendation ("R & R"). The R & R was accepted and adopted by U.S. District Judge Denise Page Hood and is reported in 893 F.Supp. at 711–23.

In his R & R, Magistrate Judge Pepe discussed the legal standard to be applied to a § 1983 claim brought for retaliation against a prisoner-plaintiff for his exercise of rights enumerated within the first eight amendments to the United States Constitution. The report sets forth in comprehensive fashion a discussion of issues pertinent to defendant's argument in the present case. Magistrate Judge Pepe's reasoning is persuasive and the Court hereby adopts this reasoning as its own.

Just as in the present case, the defendant in *Kurtz* argued that the holding in *Cale* requires that any retaliatory conduct must itself be "egregious" for a prisoner to state a constitutional retaliation claim. *Kurtz*, 893 F.Supp. at 715. Indeed, this position has been accepted by several Sixth Circuit panels in unpublished opinions as well as by various district court judges. But the Court is troubled by the conspicuous absence of expressed reasoning behind this view in any of the cases adopting it, as well as the absence of any published opinions which make a similar ruling. The Court finds more logical support in the contrary view expressed in *Kurtz*.

 Where a state actor willfully violates any one of the enumerated rights guaranteed within the Bill of Rights, a separate finding that such action "shocks the conscience" or is an "egregious abuse of governmental power" is unnecessary. *See* id, at 717–19 (and cases cited therein) The willful violation of an enumerated constitutional right is a constitutional tort; the additional requirement of some *plus factor*, such as "shocks the conscience" is only present when dealing with one of the unenumerated rights guaranteed by substantive due process. *Id.*

Magistrate Judge Pepe also effectively repudiated the justification most often proffered in support of imposing the higher, substantive due process standard to prisoner retaliation claims:

> While I can understand courts' concerns about the rising tide of prisoner litigation consuming enormous judicial and state governmental resources, I fear that we do no good service to respect and allegiance to the rule of law in our society if we devise a double standard of constitutional law for prisoners and for free citizens unless the different standard is justified by "legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). For reasons noted below, the constitutional analysis of *Cale* and certain of its progeny are fundamentally in conflict with the constitutional analysis of *Graham [v. Connor*, 490 U.S. 386,

7. Or, if *Cale* docs require such proof in the context of plaintiff's claim, then the Court agrees with those cases which have held that where a prisoner's previous exercise of constitutionally protected rights is a substantial or motivating factor in retaliatory conduct, the act of retaliation is itself an "egregious abuse of governmental power" that "shocks the conscience." *See, e.g., Riley v. Overton*, No. 94–2072, 1995 WL 355667 at *2 (6th Cir. June 13, 1995); *Fields v. Powell*, No. 94–1674, 1995 WL 35628 at *1 (6th Cir.

Jan.30, 1995). *See also Newsom v. Norris*, 888 F.2d 371, 376–77 (6th Cir.1989) (and cases cited therein) (stating that " 'egregious abuse of governmental power,' *in the form of* retaliation [against a prisoner by prison officials] for exercising his first amendment right[s], ... was sufficient to state a claim for deprivation of First Amendment rights in violation of 42 U.S.C. § 1983 .... " (emphasis added)—appeals court did not require retaliatory activity which was itself egregious abuse of governmental power).

109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) ],[8] and no legitimate penological objective justifies this difference. I believe the analysis can and should be brought into harmony, and frivolous and *de minimis* prisoners' litigation can be ended by the courts in ways that are consistent with both fairness and efficiency. [n. 5]

[n. 5] Certain means of "retaliation" may be so *de minimis* as not to inhibit or punish an inmate's rights of free speech. Many verbal responses by officials of resentment or even ridicule would fall into this safe harbor of permitted response. Borrowing from *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.), *cert. denied sub nom. Employee-Officer John, # 1765 Badge Number v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1977) [(1973)], *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 1871-72, 104 L.Ed.2d 443 (1989), notes that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers" violates the Fourth Amendment. Similarly, not every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment. By developing a standard of *de minimis* actions, courts can screen out frivolous or non-meritorious claims of retaliation during the *in forma pauperis complaint* review under 28 U.S.C. § 1915 or on a motion for summary judgment.

*Id.* at 716.

Magistrate Judge Pepe concluded that:

In light of the more recent Supreme Court decision in *Graham v. Connor*, ... I am confident that the Sixth Circuit in another case involving a prison guard's intentional infringement of an inmate's First Amend-

ment rights by some retaliatory act or threats would, like *Newsom [v. Norris*, 888 F.2d 371, 376-77 (6th Cir.1989) ], allow the finding of a constitutional tort without the need for a separate instruction, in a jury trial, or a separate finding, in a bench trial, that this behavior also either "shocks the conscience" or is an "egregious abuse of governmental power."

*Id.* at 718 (footnote omitted). The fact that subsequent Sixth Circuit decisions have not so held does riot weaken Magistrate Judge Pepe's reasoning. The Court of Appeals very well might adopt Magistrate Judge Pepe's reasoning if a prisoner were to set forth the law and argue as clearly and persuasively as Magistrate Judge Pepe, or if *Riley v. Kurtz* were to reach the Sixth Circuit on appeal. The absence of persuasive argument may explain why the Sixth Circuit has only ruled on this issue in a perfunctory manner in unpublished opinions. As the matter stands, there is no binding precedent, nor any persuasive case law, that compels this Court to accept the interpretation of *Cale v. Johnson* urged by defendant in this case.

▬ Notwithstanding the foregoing discussion, even under a substantive due process analysis plaintiff has stated a claim for retaliation and has proffered sufficient evidence to survive summary judgment. If defendant did indeed destroy plaintiff's legal materials in retaliation for plaintiff's exercise of his First Amendment rights and if that destruction did impede his access to the Courts, then such conduct is conscience-shocking and constitutes an egregious abuse of governmental power in violation of substantive due process.[9]

### III. *Disposition*

For all the foregoing reasons, the Court finds that defendant's counsel has shown

---

8. In *Graham v. Connor*, the Supreme Court held that because the Fourth Amendment (at issue in that case) provided "an explicit textual source of constitutional protection" against the governmental conduct alleged, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." 490 U.S. at 395, 109 S.Ct. at 1871.

9. Indeed, even if defendant did not succeed in impeding plaintiff's access to the courts and

plaintiff cannot show actual injury at trial, the intentional destruction of legal materials, if proved, may be sufficiently conscience-shocking to support a First Amendment/ substantive due process retaliation claim. However, as this issue neither has been briefed nor argued by the parties, and may not in fact become material to adjudication of this case, the Court makes no ruling on the issue at this time.

**236**

cause why his conduct does not warrant the imposition of Rule 11 sanctions. Furthermore, to the extent that defendant might seek reconsideration of the Court's denial of his summary judgment motion, the motion for reconsideration would be denied for the reasons stated herein.

SO ORDERED.