239 F.3d 489 (2nd Cir. 2001)
 IAN DAWES, Plaintiff-Appellant,
v.
HANS WALKER, Superintendent, Auburn Correctional Facility; GEORGE B. DUNCAN, Deputy Superintendent, Auburn Correctional Facility; B. McARDLE, Lieutenant, Auburn Correctional Facility; R. HEAD, Sergeant, Auburn Correctional Facility; S. YORKEY, Correctional Officer, Defendants-Appellees.
 Docket No. 99-252
August Term 1999
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued April 4, 2000
Decided February 08, 2001
 
 Plaintiff-appellant, a pro se prisoner, appeals from an order of the District Court for the Northern District of New York (Norman A. Mordue, District Judge) dismissing his 42 U.S.C. § 1983 suit that alleges First Amendment and Eighth Amendment violations by various prison officials at the Auburn Correctional Facility in Auburn, New York.
 Affirmed.
 IAN DAWES, pro se, Sullivan Correctional Facility, Fallsburg, New York, for Plaintiff-Appellant.
 DANIEL SMIRLOCK, Assistant Solicitor General, Albany, New York (Eliot Spitzer, Attorney General of the State of New York, Albany, New York; Peter H. Schiff, Deputy Solicitor General of the State of New York, Albany, New York; Nancy A. Spiegel, Assistant Solicitor General for the State of New York, Albany, New York) for Appellees.
 Before: WALKER, Chief Judge, OAKES and WINTER, Circuit Judges.
 JOHN M. WALKER, JR., Chief Judge:
 
 
 1
 Plaintiff-appellant Ian Dawes, pro se, appeals from a July 22, 1999 order by the District Court for the Northern District of New York (Norman A. Mordue, District Judge) dismissing his 42 U.S.C. § 1983 action. Dawes alleged retaliation in violation of the First Amendment by various prison officials at the Auburn Correctional Facility in Auburn, New York. Dawes contends these officials were displeased by earlier lawsuits[1] and internal administrative grievances he had filed and therefore sought to punish him by inciting inmates to attack him. Dawes also asserts a related Eighth Amendment violation based on Officer McArdle's purported attempt to compel an inmate to attack Dawes.
 
 
 2
 For the reasons stated herein, we affirm the district court's dismissal.
 
 BACKGROUND
 
 3
 According to the complaint, on August 30, 1996, Dawes was informed by a fellow inmate, Levin, that defendant McArdle had threatened to place Levin on a "restricted diet" unless he attacked Dawes. Dawes contends that McArdle wanted to use the altercation that would ensue as an excuse to impose disciplinary sanctions on Dawes. Dawes alleges that this was in retaliation for his having successfully appealed an unspecified disciplinary order early imposed on him by McArdle. Nowhere does Dawes allege that he was either attacked or even threatened by Levin.
 
 
 4
 Dawes, however, did report Levin's allegations against McArdle to Auburn Superintendent Hans Walker on September 3, 1996. Walker in turn directed Sergeant R. Head to investigate. According to the complaint, during the course of the investigation, Sergeant Head approached Dawes and, allegedly with the intent that other prisoners hear him, stated "Dawes . . . you have wr[itten] the Superintendent claiming you have enemies here in [the] tank who[m] you don't want to be in [the prison] yard with, you are a rat . . . ." Dawes contends that Sergeant Head's "conduct was intended to lab[el him] as an 'informant' for the purpose of inflaming other prisoners . . . against [him]," which he further contends would "inevitably provoke an attack against [him] by other prisoners."
 
 
 5
 Dawes also alleges that beginning on November 18, 1996, Officer S. Yorkey engaged in similar conduct. Yorkey allegedly informed various unidentified inmates that Dawes is "an informant."
 
 
 6
 On October 2, 1996, Dawes filed the present suit seeking compensatory and injunctive relief. In late 1998, Dawes was transferred from Auburn to another correctional facility.[2]
 
 DISCUSSION
 A. Standard of Review
 
 7
 Because the district court dismissed Dawes's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), our review is de novo. See, e.g., Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). At the pleading stage, we assume all well-pled factual allegations are true and draw all reasonable inferences favorable to the plaintiff. See, e.g., Gant v. Wallingford Bd. of Educ., 69 F.3d 669, 673 (2d Cir. 1995). We give no credence to plaintiff's conclusory allegations, however. See, e.g., Leeds, 85 F.3d at 53.
 
 B. First Amendment Retaliation
 
 8
 "Retaliation, though it is not expressly referred to in the Constitution, is nonetheless actionable because retaliatory actions may tend to chill individuals' exercise of constitutional rights." ACLU v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993).
 
 
 9
 As a threshold matter, we note that courts must approach prisoner claims of retaliation with skepticism and particular care. See Flaherty v. Coughlin, 713 F.2d 10, 13 (2d Cir. 1983). This is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official--even those otherwise not rising to the level of a constitutional violation--can be characterized as a constitutionally proscribed retaliatory act. See Franco v. Kelly, 854 F.2d 584, 590 (2d Cir. 1988); see also Wicomico County, 999 F.2d at 785 ("Retaliation by a public official for the exercise of a constitutional right is actionable . . . even if the act, when taken for different reasons, would have been [constitutionally permissible]."); Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000) (same); Johnson v. Rodriguez, 110 F.3d 299, 313 n.19 (5th Cir. 1997) (same). Given that such adversity is an ever-present concomitant of prison life, the opportunities to characterize its manifestations as actionable retaliation are far greater than that for society at large.
 
 
 10
 To survive summary dismissal, a plaintiff asserting First Amendment retaliation claims must advance non-conclusory allegations establishing: (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action. See, e.g., Thaddeus-X v. Blatter, 175 F.3d 378, 386-87 (6th Cir. 1999) (en banc) (per curiam); see also Diesel v. Town of Lewisboro, 232 F.3d 92, 107 (2d Cir. 2000). Dawes's First Amendment retaliation claims against McArdle, Yorkey and Head each fail because none makes this prima facie showing.
 
 
 11
 In his claim against McArdle, Dawes alleged that as retaliation for his having appealed an unspecified disciplinary order, which appeal was protected by the First Amendment, see, e.g., Franco, 854 F.2d at 590, McArdle sought to coerce inmate Levin to assault Dawes. Cf. Bowman v. City of Middletown, 91 F. Supp. 2d 644, 664 (S.D.N.Y. 2000). The district court dismissed the claim because it found the complaint did not set forth facts supporting a causal connection between the two events. Specifically, the district court reasoned:
 
 
 12
 it is unclear from [Dawes's] submissions when he secured this reversal in relation to the ordered attack. Without such context, this Court cannot find that Defendant McArdle's conduct was motivated by Plaintiff's successful reversal.
 
 
 13
 Dawes v. Walker, No. 96-CV-1675, at 7 (N.D.N.Y. July 22, 1999) (unpublished mem. decision & order).
 
 
 14
 We agree with the district court that Dawes's failure to set forth a time frame for the alleged events--reversal of McArdle's disciplinary order and McArdle's discussion with Levin about assaulting Dawes--precludes inference of a causal relationship. See Diesel, 232 F.3d at 107 ("The causal connection must be sufficient to support the inference 'that the speech played a substantial part' [in the adverse action]." (quoting Ezekwo v. NYC Health & Hosp. Corp., 940 F.2d 775, 780-91 (2d Cir. 1991))). However, we note that this is not the only omission that precludes inference of a causal relationship. For instance, Dawes fails to set out the nature of the disciplinary order and the reasons for its reversal. This information could have aided in establishing a plausible motivation for McArdle to retaliate against Dawes and thus could have created an inference of a causal relation. Instead of providing such information, Dawes asserted only bald allegations of retaliation. These factual omissions are particularly striking because Dawes can be expected to have firsthand knowledge of them. Accordingly, we hold that the district court properly dismissed the retaliation claim against McArdle.
 
 
 15
 Dawes's retaliation claims against Yorkey and Sergeant Head involve retaliatory acts purportedly undertaken by both as a result of Dawes's filing an internal prison complaint against Officer McArdle, which was protected by the First Amendment. See, e.g., Graham v. Henderson, 89 F.3d 75, 80 (2d Cir. 1996). Yorkey is alleged to have referred to Dawes as "an informant" during discussions with unidentified inmates and Sergeant Head is alleged to have called Dawes a "rat" to his face on one occasion. The district court dismissed both claims. As to the claim against Yorkey, the district court concluded that no inference of causation had been established. And as to the claim against Sergeant Head, it found the service of process deficient. We affirm the dismissal of both claims, but do so on different grounds.
 
 
 16
 We find the statements purportedly made both by Yorkey and by Sergeant Head do not constitute adverse actions and thus do not make out claims of retaliation. Cf. Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (holding that administrative segregation of prisoner could constitute adverse act). While, as we discussed above, the scope of conduct that can constitute actionable retaliation in the prison setting is broad, it is not true that every response to a prisoner's exercise of a constitutional right gives rise to a retaliation claim. See, e.g., Bart v. Telford, 677 F.2d 622, 625 (7th Cir. 1982) ("It would trivialize the First Amendment to hold that harassment for exercising the right of free speech [is] always actionable . . . ."); Riley v. Coutu, 172 F.R.D. 228, 235 (E.D. Mich. 1997) ("Certain means of 'retaliation' may be so de minimis as not to inhibit or punish an inmate's right of free speech. Many verbal responses by officials of resentment or even ridicule would fall into this safe harbor of permitted response.").
 
 
 17
 Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation. See Suppan v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000); Thaddeus-X, 175 F.3d at 398; Crawford-El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996) (en banc), rev'd on other grounds, 523 U.S. 574 (1998); Bart, 677 F.2d at 625. Otherwise, the retaliatory act is simply de minimis and therefore outside the ambit of constitutional protection. See, e.g., Davidson v. Chestnut, 193 F.3d 144, 150 (2d Cir. 1999) (per curiam). This objective inquiry is "not static across contexts," but rather must be "tailored to the different circumstances in which retaliation claims arise." Thaddeus-X, 175 F.3d at 398. "Prisoners may be required to tolerate more than public employees, who may be required to tolerate more than average citizens, before a[ retaliatory] action taken against them is considered adverse." Id.
 
 
 18
 Dawes has failed to produce evidence that permits us to conclude that, under the circumstances he alleges, a reasonable prisoner would have been deterred from the exercise of his constitutional rights. Indeed, Dawes does nothing more than state in conclusory terms that the references to him as an "informant" and a "rat" for filing the grievance against McArdle opened him up to assault from his fellow inmates, and that this alone was sufficient to deter a reasonable prisoner in the exercise of his constitutional rights. We disagree.
 
 
 19
 Not every unnecessary statement of a prison guard regarding an inmate's exercise of free speech violates the First Amendment. See, e.g., Riley v. Coutu, 172 F.R.D. 228, 235 (E.D. Mich. 1997). Absent some factual showing that the comments by the prison officials actually risked inciting other inmates against Dawes, we are unwilling simply to assume that prison inmates would be incited, without more, to attack "one of their own" who was labeled an "informant" and a "rat" for complaining to prison supervisors about a prison guard's conduct.
 
 C. Eighth Amendment
 
 20
 To establish an Eighth Amendment claim based on prison conditions, as Dawes attempts to do,[3] two showings must be made. See, e.g., Wilson v. Seiter, 501 U.S. 294, 298 (1991); Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996); see also Williams v. Mueller, 13 F.3d 1214, 1216 (8th Cir. 1994) (Eighth Amendment apparently violated when officer stood idly by as two inmates beat a third inmate, delayed requesting assistance, and blocked the inmate's attempt to escape). First, "the deprivation alleged by the prisoner must be in objective terms 'sufficiently serious' such that the deprivation 'den[ied] the minimal civilized measure of life's necessities'"--the objective element. Branham v. Meachum, 77 F.3d 626, 630-31 (2d Cir. 1996) (alteration in original) (quoting Wilson, 501 U.S. at 297; see Farmer v. Brennan, 511 U.S. 825, 834 (1994) (inmate must establish "substantial risk of serious harm"). Second, because "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,'" the prisoner must assert facts indicating that the responsible prison official had "a 'sufficiently culpable state of mind'" amounting to at least deliberate indifference--the subjective element. Farmer, 511 U.S. at 834 (quoting Wilson, 501 U.S. at 298); see Jolly, 76 F.3d at 481. To avoid Rule 12(b)(6) dismissal, plaintiffs must advance factual allegations sufficient to support both elements.
 
 
 21
 In dismissing Dawes's Eighth Amendment claim, the district court accepted an earlier report and recommendation by Magistrate Judge Ralph Smith that the claim be dismissed because, "[e]ven construed liberally, the complaint fails to allege that a substantial risk of serious harm existed from the conduct of the Defendants or from the inmate who notified [Dawes] that he was told to commit an assault upon him." The court concluded that Dawes failed to assert facts supporting the objective element--that a threat of serious injury to Dawes existed--and that this deficiency was fatal to his Eighth Amendment claim. We agree.
 
 
 22
 Dawes's complaint is devoid of factual allegations that give rise to an inference that he actually faced a serious threat from Levin. Dawes does not contend that Levin assaulted him, that Levin threatened him with physical violence nor even that there were credible rumors that Levin intended to attack him. Having made no such factual assertions, Dawes failed to make the requisite showing required to support the objective element of his Eighth Amendment claim.
 
 
 23
 Perhaps recognizing this pleading deficiency, Dawes relies on the Tenth Circuit Court of Appeals' decision in Northington v. Jackson, 973 F.2d 1518, 1525 (10th Cir. 1992), to argue that factual allegations of the subjective element alone are sufficient to make out an Eighth Amendment claim that alleges conduct by a prison official intended to incite an inmate assault. Northington supports no such proposition. To be sure, the Northington court's inquiry focused exclusively on the subjective element without either discussion or application of the Eighth Amendment's objective element. See id. (stating "[w]hen an inmate is able to prove [intent to incite an inmate beating], it is as if the guard himself inflicted the beating" and thus a "violation of the Eighth Amendment" is established). However, given the facts of the case, we believe Dawes reads too much from the court's silence regarding the objective element. The plaintiff-inmate in Northington alleged that he had been "severely beaten on two occasions by groups of inmates." Id. The allegation of these two attacks was sufficient on a Rule 12(b)(6) motion to satisfy the objective element--plainly raising material questions as to whether a substantial risk of serious harm existed--and thereby obviated the court's need to expressly consider the objective element.
 
 CONCLUSION
 
 24
 We have considered Dawes's remaining contentions and find them without merit. Accordingly, the judgment of the district court dismissing the action is hereby affirmed.
 
 
 
 NOTES:
 
 
 [1]
 By his own admission, Dawes is an "active" pro se litigant in the federal courts. At the time this action was filed on July 4, 1997, it marked his tenth then-pending lawsuit.
 
 
 [2]
 Because Dawes is no longer housed at the Auburn Correctional Facility, his prayer for injunctive relief is moot. See Purcell v. Coughlin, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam).
 
 
 [3]
 In other ciruits, an Eighth Amendment claim such as Dawes alleges here might be characterized as a "failure-to-protect" claim. See, e.g., Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997). Such claims appear to be merely a subset of Eighth Amendment prison-condition claims and are subject to the same analysis.
 
 
 
 25
 JOHN M. WALKER, JR., Chief Judge, writing separately:
 
 
 26
 I write separately from the court to highlight a deficiency I perceive in the drafting of 42 U.S.C. § 1997e(e) that this case presents. See generally Robert A. Katzmann & Stephanie M. Herseth, An Experiment in Statutory Communication Between Court and Congress: A Progress Report, 85 Geo. L.J. 2189, 2189 (1997) (court opinions should "identify drafting problems that the legislative branch may want to address" and "effectively communicate their . . . suggestions to legislatures").
 
 Section 1997e(e) provides:
 
 27
 LIMITATION ON RECOVERY: No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.
 
 
 28
 The provision was enacted by Congress as part of the Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321 (1996). It targets only damage actions and "has no restrictive effect on claims for declaratory or injunctive relief." Davis v. District of Columbia, 158 F.3d 1342, 1346 (D.C. Cir. 1998).
 
 
 29
 Congress intended § 1997e(e) to reduce the burgeoning volume of prisoner litigation in the federal courts, particularly prisoner damages claims brought under 42 U.S.C. § 1983. Congress believed--correctly in my view--that the overwhelming majority of these claims are frivolous and therefore impose an unnecessary burden on the federal courts and the states. As then-Senate Majority Leader Robert Dole stated upon introducing the legislation:
 
 
 30
 the number of "due-process and cruel and unusual punishment" complaints filed by prisoners has grown astronomically-from 6,600 in 1975 to more than 39,000 in 1994. These suits can involve such grievances as insufficient storage locker space, a defective haircut by a prison barber, the failure of prison officials to invite a prisoner to a pizza party for a departing prison employee, and yes, being served chunky peanut butter instead of the creamy variety. . . .
 
 
 31
 These legal claims may sound far-fetched, almost funny, but unfortunately, prisoner litigation does not operate in a vacuum. Frivolous lawsuits filed by prisoners tie up the courts, waste valuable legal resources, and affect the quality of justice enjoyed by law-abiding citizens. The time and money spent defending these cases are clearly time and money better spent prosecuting violent criminals, fighting illegal drugs, or cracking down on consumer fraud.
 
 
 32
 The National Association of Attorneys General estimates that inmate civil rights litigation costs the States more than $81 million each year. Of course, most of these costs are incurred defending lawsuits that have no merit whatsoever.
 
 
 33
 141 Cong. Rec. S14408-01, at *S14413.
 
 
 34
 To reduce the volume of frivolous prisoner claims, Congress crafted § 1997e(e) to tie recovery for emotional injury to the existence of a corresponding physical injury.[4] See also Luong v. Hatt, 979 F. Supp. 481, 486 (N.D. Tex. 1997) (more than de minimis "physical injury" required under § 1997e(e)). It seems that Congress concluded that the existence of a physical injury would distinguish meritorious prisoner claims of emotional injury from frivolous ones; the physical injury would, in essence, vouch for the asserted emotional injury. See Zehner v. Trigg, 952 F. Supp. 1318, 1325 (S.D. Ind. 1997); cf. Zelinsky v. Chimics, 175 A.2d 351, 354 (Pa. Super. Ct. 1961) ("[T]he purpose of the rule requiring physical injury or physical impact is to prevent 'illusory or imaginative or faked claim[s].'"); John G. Langhenry, Jr., Personal Injury Law and Emotional Distress, 9 J. Psychiatry & L. 91, 93 (1981); Restatement (Second) of Torts § 436A (1965); cf. also Dan B. Dobbs, The Law of Torts § 302, at 822-24 (2000) (discussing problems with "stand alone emotional" injury claims). Congress recognized that, unlike physical injuries, emotional injuries are inherently difficult to verify and therefore tend to be concocted for frivolous suits. See also, e.g., Price v. City of Charlotte, 93 F.3d 1241, 1250 (4th Cir. 1996) ("Not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims."); see also Michael Wells, Constitutional Remedies, Section 1983 and the Common Law, 68 Miss. L.J. 157, part IV.C.1. (1998).
 
 
 35
 In structuring § 1997e(e) to preclude prisoners from "recovery" "for mental and emotional injury suffered while in custody without a prior showing of physical injury," Congress looked to the common law of torts. See Zehner, 952 F. Supp. at 1325 ("[B]y enacting § 1997e(e), Congress took a page from the common law by limiting claims for mental and emotional injuries, which can easily be feigned or exaggerated, in the absence of physical injury."). Under the common law of torts, § 1997e(e)'s physical injury requirement would result, in most cases, in the dismissal of claims asserting only emotional injuries. This is so because the general rule in common law tort actions is that a showing of an actual injury is an essential element of the prima facie case that must be pled to avoid dismissal.[5] Prohibiting emotional injuries unaccompanied by physical injuries from satisfying the prima-facie actual-injury showing, as § 1997e(e) does, would be enough to defeat the claim, necessitating its dismissal and sparing the defendants the burdens of litigation.
 
 
 36
 Because Congress modeled § 1997e(e) on the common law of torts, I believe that Congress intended to eliminate frivolous emotional distress claims root and branch, that is, at the pleading stage. Indeed, only by allowing dismissal of such claims on the pleadings would § 1997e(e) substantially conserve judicial resources in the way the legislative history suggests Congress intended. Unfortunately, where prisoner suits that allege constitutional torts pursuant to 42 U.S.C. § 1983 are concerned, § 1997e(e) fails to achieve this purpose. Cf. Cassidy v. Ind. Dep't of Corr., 199 F.3d 374, 376 (7th Cir. 2000) (holding that § 1997e(e) applies to constitutional torts).
 
 
 37
 The difficulty arises because § 1983, unlike common law tort actions, does not require plaintiffs to establish an actual injury as an element of the prima facie case. See, e.g., Greenwich Citizens Comm. v. Counties of Warren and Washington Indus. Dev. Agency, 77 F.3d 26, 29-30 (2d Cir. 1996) ("[A] plaintiff must show that (1) 'the conduct complained of was committed by a person acting under color of state law,' and (2) 'this conduct deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States.'" (quoting Parratt v. Taylor, 451 U.S. 527, 535 (1981))); see generally Michael Irvine, Using 42 U.S.C. § 1983 and 28 U.S.C. § 1331 to Obtain Relief from Violations of Federal Law, 31 Colum. Hum. Rts. L. Rev. 305, 307-326 (2000). The failure of prisoners to plead or establish a compensable actual injury in a § 1983 constitutional tort claim, therefore, only precludes the recovery of compensatory damages, but does not lead to the dismissal of the underlying claim. Nominal damages remain available and the action is entitled to proceed. See Carey v. Piphus, 435 U.S. 247, 266 (1978); see, e.g., Diesel v. Town of Lewisboro, 232 F.3d 92, 108 (2d Cir. 2000) ("Plaintiffs may recover nominal damages under § 1983 'in the absence of proof of actual injury.'" (quoting Atkins v. New York City, 143 F.3d 100, 103 (2d Cir. 1998)); Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 651 (2d Cir. 1998) (same); see also Floyd v. Laws, 929 F.2d 1390, 1402 (9th Cir. 1991); Santiago v. Garcia, 821 F.2d 822, 829 (7th Cir. 1987).
 
 
 38
 Indeed, our circuit precedent holds that it is error for courts not to award nominal damages in § 1983 actions where a constitutional violation is established. See Robinson v. Cattaraugus County, 147 F.3d 153, 162 (2d Cir. 1998); see also Draper v. Coombs, 792 F.2d 915, 921-22 (9th Cir. 1986) (error for district court to dismiss § 1983 action for lack of actual injury since plaintiff still had claim for nominal damages); Farrar v. Cain, 756 F.2d 1148, 1152 (5th Cir. 1985) (abuse of discretion for district court not to award nominal damages for plaintiff who established constitutional violation); see generally Mark T. Morrell, Note, Who Wants Nominal Damages Anyway? The Impact of an Automatic Entitlement to Nominal Damages Under § 1983, 13 Regent U. L. Rev. 225, 234-36 (2000-01) (discussing § 1983's automatic award of nominal damages for constitutional torts).
 
 
 39
 By only precluding compensatory recovery for purely emotional injuries in § 1983 suits, § 1997e(e) is unlikely to deter prisoner litigants from filing frivolous claims. I believe this to be so for two reasons. First, punitive damages remain available. See, e.g., Robinson, 147 F.3d at 161 (holding that "in § 1983 cases . . . punitive damages may be awarded even in the absence of a compensatory award"). The potential for a windfall punitive award--no matter how remote--provides a powerful economic incentive for prisoners to continue to file frivolous § 1983 claims based on concocted or imagined emotional injuries. Second, even in instances where prisoners recognize that their claims will not satisfy the requisite level of culpability for punitive recovery, see, e.g., Mathie v. Fries, 121 F.3d 808, 815 (2d Cir. 1997), ordinary disincentives to commencing litigation are absent. Non-prisoner litigants face financial costs and time constraints that must be balanced against the potential recovery in deciding whether to bring suit. Prisoners, on the other hand, have a low opportunity cost for their time and, because they generally file pro se and in forma pauperis, bear few financial costs.[6] See Madrid v. Gomez, 190 F.3d 990, 996 (9th Cir. 1999). It follows then that, by only operating as a bar on compensatory recovery, § 1997e(e) fails effectively to deter prisoners' from filing frivolous suits. Rather, it simply leads to the conversion of frivolous compensatory damages claims asserting only emotional injuries into frivolous nominal damages claims pleading no actual injury. Cf. Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir. 1986) (prisoner entitled to nominal damages for Eighth Amendment prison conditions claim even if he is not "able to establish actual damages").
 
 
 40
 If Congress wishes to curtail unnecessary, burdensome prisoner litigation, it should consider amending § 1997e(e) to require actual damages as a component of prisoners' § 1983 prima facie case. See generally Spencer v. Kemna, 523 U.S. 1, 17 (1998) (§ 1983 damage actions need not "always and everywhere be available"). Such an amendment, together with the present text of § 1997e(e), would allow courts to summarily dispose of frivolous claims asserting only emotional injuries, such as Dawes alleged here.[7]
 
 
 
 NOTES:
 
 
 [4]
 As stated by Senator John Kyl of Arizona, a co-sponsor of the legislation, § 1997e(e) was intended to:
 bar inmate lawsuits for mental or emotional injury suffered while in custody unless they can show physical injury. Of the 60,086 prisoner petitions in 1994 about two-thirds were prisoner civil rights petitions, according to the Administrative Office of the U.S. courts. Prisoner civil rights petitions are brought under 42 U.S.C. 1983[] . . . in Federal court by State inmates seeking redress for a violation of their civil rights. "The volume of section 1983 litigation is substantial by any standard," according to the Justice Department's report on section 1983 litigation[.] Indeed, the Administrative Office [AO] of the U.S. courts counted only 218 cases in 1966, the first year that State prisoners' rights cases were recorded as a specific category of litigation. The number climbed to 26,824 by 1992. When compared to the total number of all civil cases filed in the Nation's U.S. district courts, more than 1 in every 10 civil filings is now a section 1983 lawsuit, according to the AO.
 141 Cong. Rec. S7498-01, at *S7527 (internal citation omitted); see also Kerr v. Puckett, 138 F.3d 321, 323 (7th Cir. 1998) ("Congress deemed prisoners to be pestiferous litigants because they have so much free time on their hands and there are few costs to filing suit.").
 
 
 [5]
 Defamation actions are a notable exception. See, e.g., Celle v. Filipino Reporter Enter., 209 F.3d 163, 179 (2d Cir. 2000) ("If a statement is defamatory per se, injury is assumed. In such a case, '[e]ven where the plaintiff can show no actual damages at all, a plaintiff who has otherwise shown defamation may recover at least nominal damages.'" (alteration in original)).
 
 
 [6]
 Other provisions of the Prison Litigation Act of 1996 can be thought to have marginally increased the opportunity costs to prisoners in filing frivolous suits. For example, a federal prisoner's good time credits may be revoked for filing a claim the court determines to be malicious or filed solely to harass the defendant. See 28 U.S.C. § 1932 (Supp. II 1996).
 
 
 [7]
 Congress may also wish to clarify whether § 1997e(e) is confined to Eighth Amendment claims, see, e.g., Canell v. Lightner, 143 F.3d 1210, 1213 (9th Cir. 1998) ("[Section] 1997e(e) does not apply to First Amendment claims regardless of the form of relief sought." (footnote omitted)); Robinson v. Page, 170 F.3d 747, 748 (7th Cir. 1999), Self-Allah v. Annucci, No. 97-CV-607(H), 1998 WL 912008, at *5 (N.D.N.Y. October 14, 1998), or whether it extends to all purported constitutional violations brought by prisoners pursuant to § 1983.