Charlene LATHROP, Plaintiff,

v.

ONONDAGA COUNTY; Onondaga Community College; Public Safety Institute; Central New York Police Academy; Richard Flanagan, individually and in his official capacity as Director of the Public Safety Institute and Central New York Police Academy; and Katherine Lapp, in her official capacity as Commissioner of the State of New York Division of Criminal Justice Services, Defendants.

No. 5:99–CV–586(FJS/GLS).

United States District Court, N.D. New York.

Sept. 12, 2002.

Satter & Andrews, LLP, Syracuse, NY (Richard A. Maroka, of counsel), for plaintiff.

Office of the New York, State Attorney General, Syracuse, NY (Maria Moran, of counsel) for Defendant Lapp.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

The only remaining claims in this action are Plaintiff's eighth and tenth causes of action, which allege that Defendants discriminated against her on the basis of her gender and retaliated against her for filing a complaint of discrimination with the New York Division of Human Rights ("DHR") and the Equal Employment Opportunity Commission ("EEOC") in violation of her First and Fourteenth Amendment rights.[1] Plaintiff seeks prospective equitable relief from Defendant Katherine Lapp, in her official capacity as Commissioner of the New York State Division of Criminal Justice Services ("DCJS").[2] Specifically, Plaintiff requests that DCJS certify her as a police officer.

Presently before the Court are DCJS's motion for summary judgment and Plaintiff's cross-motion for partial summary judgment. The Court heard oral argument in support of, and in opposition to, these motions on June 14, 2002. At that time, the Court granted DCJS's motion for summary judgment with respect to Plaintiff's Fourteenth Amendment due process and equal protection claims and reserved

---

1. In her eighth cause of action, Plaintiff claims that Defendants discriminated against her on the basis of her gender pursuant to a custom or practice under color of law in deliberate, reckless and/or callous indifference to her well-established rights under § 1983. In her tenth cause of action, Plaintiff claims that Defendants retaliated against her pursuant to a custom or practice under color of law in deliberate, reckless, and/or callous indifference to Plaintiff's well-established rights under § 1983.

2. Since Plaintiff is suing Ms. Lapp in her official capacity only, the Court will refer to Defendant as DCJS.

decision with respect to Plaintiff's First Amendment retaliation claim. The following constitutes the Court's written decision with respect to the remaining claim.

## II. BACKGROUND

On December 23, 1996, Plaintiff was provisionally appointed a police officer in the Village of Marcellus. A police officer must complete an approved basic course for police officers within one year of her appointment and obtain a certificate of completion attesting to such completion from DCJS or forfeit her provisional appointment and be precluded from permanent appointment.[3] See N.Y. Gen. Mun. Law § 209–q(1); N.Y. Comp.Codes R. & Regs. tit. 9, § 6020.7.

Plaintiff enrolled in and attended the Central New York Police Academy ("Academy") from January until May 1997 in an effort to complete the basic course and obtain certification from DCJS. Plaintiff successfully completed all of the basic course requirements except for the "defensive tactics" examination, the final examination that the Academy administered as part of its basic course. The defensive tactics test was comprised of six scenarios of varying degrees of difficulty designed to evaluate the proficiency of each candidate in defensive tactics.

When Plaintiff first took the defensive tactics examination in May 1997, she successfully completed the first five scenarios but not the sixth. As per Academy practice, all the candidates who had failed the defensive tactics examination, including Plaintiff, were provided with an opportunity to retake the examination. Approximately one week after she first took the examination, Plaintiff retook the test and once again failed.

By letter dated May 22, 1997, the Academy informed Plaintiff that she could retest in defensive tactics at any time within one year of her appointment date; i.e., by December 23, 1997. See Affidavit of Richard A. Maroko, sworn to January 4, 2001 ("Maroko Jan. Aff."), at Exh. "G." Plaintiff began training soon after she received the letter with the intention of retesting. However, by letter dated July 29, 1997, the Academy rescinded its offer of retesting, expressly because Plaintiff had filed a claim of discrimination against the Academy.[4] See Maroko Jan. Aff. at Exh. "K." Specifically, the letter, which was signed by Richard H. Flanagan, Director, Central New York Police Academy, stated: "[m]y letter to you dated 22 May, 1997 offering to retest [Plaintiff] is hereby rescinded. We will not retest [Plaintiff] while this issue is in litigation.... While this matter is in litigation, [Plaintiff] will not be admitted into any courses offered by the Central New York Police Academy or the Public Safety Institute." See id.[5] As a result of this letter, Plaintiff was unable to schedule a retest and complete the basic course within one year of her appointment.

On December 13, 1997, Chief of Police Lathrop, the Chief of Police of the Village

---

3. DCJS is the agency that is statutorily authorized to "[c]ertify police officers ... who have satisfactorily completed basic training programs and issue certificates to such police officers ..." N.Y. Exec. Law § 841(3) (McKinney 1996 and Supp.2002). DCJS does not independently assess the qualifications or performance of individual police officer candidates; it merely certifies that the individual has completed a basic course that DCJS has approved. Accordingly, upon the certification of an academy director stating that a candidate has satisfactorily completed the ba-

sic course, DCJS issues a certificate of completion. See N.Y. Comp.Codes R. & Regs. tit. 9, § 6020.6(f).

4. Plaintiff refers to this letter as the "smoking gun" letter.

5. Director Flanagan noted in his letter that he was rescinding his offer to retest Plaintiff "upon advice of the Onondaga County Department of [L]aw[.]" See Maroko Jan. Aff. at Exh. "K."

of Marcellus and Plaintiff's husband, wrote to DCJS, seeking an extension of time for Plaintiff to complete the basic course. He explained that Plaintiff had experienced problems completing defensive tactics and that he had talked to Sgt. Michael Pollman at the Academy on December 11, 1997, who had informed him that the Academy had "reevaluated other recruits on various tasks and will do the same for [Plaintiff] as soon as she is ready." *See* Affidavit of Harry Lathrop, sworn to January 4, 2001 ("H. Lathrop Aff."), at Exh. "D." DCJS responded by letter dated January 12, 1998. In that letter, Deputy Commissioner Burrell rejected Plaintiff's request, stating that "[t]he circumstances described in your letter cannot be considered exigent as defined by the regulations for the Basic Course for Police Officers. Accordingly, I am without regulatory authority to approve a time extension for [Plaintiff's] basic training."[6] *See* Maroko Jan. Aff. at Exh. "N" at 2.

Upon receiving Deputy Commissioner Burrell's response, Chief Lathrop sent DCJS a second, supplemental request for an extension dated January 15, 1998. In that letter, Chief Lathrop stated that he believed that the circumstances surrounding Plaintiff's failure to timely complete the basic course at the Academy constituted exigent circumstances. He explained that Plaintiff was unable to timely complete the basic course because she "is in litigation with the academy and this is why 'the academy will not let her retest.'" *See* Maroko Jan. Aff. at Exh. "O." Attached to this letter was Director Flanagan's July 29, 1997 letter, which stated that the Academy would not allow Plaintiff to retest during the course of her litigation with the Academy.

Deputy Commissioner Burrell forwarded Chief Lathrop's letter to Mr. Digman for a response. On January 27, 1998, Mr. Digman wrote an internal memo regarding this letter, in which he stated that

[a]pparently Chief Lathrop does not want to take "no" for an answer. As you know, his wife wrote to us several times in the past, rehashing the same old arguments [regarding an unrelated Civil Service issue]. We finally decided not to respond to her anymore, we have not heard from her since. I think that we should take the same approach with Chief Lathrop because every time we respond to him we invite another response. We have to draw the line somewhere or we will have a pen pal for life.

*See* Maroko Jan. Aff. at Exh. "Q."

Apparently acting on this recommendation, DCJS did not respond to Chief Lathrop's January 1998 letter.

Ten months later, Plaintiff's counsel, after consultation with the Onondaga County Attorney's Office, sent a third letter to DCJS dated October 22, 1998, supplementing the January 15, 1998 request, containing Director Flanagan's letter. *See* Maroko Jan. Aff. at Exh. "S." The letter explained that Plaintiff and the Academy had agreed to a retest to be administered by a mutually agreeable examiner. *See id.* The letter also renewed the request for an extension of time based upon the circumstances surrounding Plaintiff's failure to timely complete the basic course, specifically noting that Plaintiff alleged that the recission of the opportunity to retest because of her complaint of discrimination was unlawful retaliation. *See id.*

By letter dated November 16, 1998, two days after Plaintiff had passed the retest,

6. The regulations provide that "[i]llustrative of exigent circumstances are: the officer's inability to complete a basic course for health reasons or the temporary unavailability of a training program within a reasonable distance from the officer's place of employment." N.Y. Comp.Codes R. & Regs. tit. 9, § 6020.7(b).

DCJS responded, again declining to extend Plaintiff's appointment period. *See* Maroko Jan. Aff. at Exh. "T." The letter stated that after considering the previous information and Plaintiff's submissions, DCJS would not reconsider its original determination that there existed no exigent circumstances warranting an extension. *See id.*

On December 4, 1998, Director Flanagan sent a letter to DCJS, in which he noted that Plaintiff was listed on the enclosed original class roster as not having completed the arrest techniques requirements of the course. *See* Maroko Jan. Aff. at Exh. "U." Director Flanagan explained that

> On 11–14–98 [Plaintiff] was re-evaluated. At that time, [Plaintiff] passed the arrest techniques component. George Korthas of the Oswego County Sheriff's Department evaluated her. He is a certified FBI Defensive Tactics instructor who serves as an evaluator for this Academy and who evaluated [Plaintiff] using this academy's guidelines.
>
> I request that [Plaintiff's] status now indicate she has successfully completed the Basic Course for Police Officers.

*See id.*

On the same day, Director Flanagan faxed yet another copy of his July 29, 1997 letter to DCJS. Had DCJS provided Plaintiff with a one-year extension when it was first requested to do so, Director Flanagan's request that Plaintiff be issued a certification of completion would have been timely.

By letter dated December 21, 1998, DCJS once again refused to take any action. *See* Maroko Aff. at Exh. "W." DCJS asserted that

> [t]o this date, the Division of Criminal Justice Services has not been presented with any documents or information which supports an approval of an extension of the time period within which [Plaintiff] was to complete her training.
>
> Consequently, [Plaintiff's] training record cannot be amended to reflect a satisfactory completion of the Basic Course for Police Officers.

*See id.* at 1–2.

Thus, DCJS refused to issue Plaintiff the certification she required.

## III. DISCUSSION

Plaintiff claims that DCJS is liable to her because it was deliberately indifferent to her constitutional rights. Specifically, Plaintiff asserts that even though DCJS had actual knowledge that the Academy and Director Flanagan had retaliated against her for filing a complaint of discrimination with the DHR and the EEOC in violation of her First Amendment right to petition the government for redress, DCJS refused to grant her request for an extension of time in which to complete the basic course and subsequently refused to certify her as a police officer.[7]

There are two distinct parts to Plaintiff's First Amendment retaliation claim against DCJS. First, the Court must determine whether Plaintiff has established that a person acting under color of state law has deprived her of a constitutional right. *See Soto v. Schembri*, 960 F.Supp. 751, 756 (S.D.N.Y.1997) (citation omitted). Second, the Court must determine whether DCJS may be held liable for that action based upon the requirements for municipal liability set forth in *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). *See id.*

---

7. Plaintiff acknowledges that under § 1983 she cannot recover money damages against DCJS. Therefore, she seeks only prospective injunctive and equitable relief; i.e., an order requiring DCJS to certify her as a police officer.

The Court will address each part of Plaintiff's claim in turn.

## A. The constitutional deprivation [8]

■ To prove that she was retaliated against in violation of the First Amendment, Plaintiff must establish " '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action.' " *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 106–07 (2d Cir. 2001) (quoting *Dawes v. Walker,* 239 F.3d 489, 492 (2d Cir.2001)) (other citation omitted).

In the present case, Plaintiff alleges (1) that she engaged in a protected activity when she filed a claim of discrimination with the DHR and the EEOC against the Academy,[9] (2) that Director Flanagan and the Academy took an adverse action against her by refusing to retest her in defensive tactics, and (3) that there is a causal connection between the protected speech and the adverse action as conclusively demonstrated by Director Flanagan's July 29, 1997 letter, which specifically stated that the Academy would not retest Plaintiff because of the ongoing litigation. Based upon these allegations, there can be no dispute that Plaintiff has established a First Amendment violation. Therefore, the Court will turn to the second part of Plaintiff's § 1983 claim—the liability of DCJS under *Monell.*

## B. Municipal liability under § 1983 [10]

■ To succeed on a municipal liability claim under § 1983, a plaintiff must

---

8. As the Court noted at oral argument, it agrees with Plaintiff that for purposes of her First Amendment claim against DCJS she should be considered a student and not an employee. Thus, the public concern doctrine does not apply to her claim. *See Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 106 (2d Cir.2001) ("the public concern doctrine does not apply to student speech in the university setting, ..., but is reserved for situations where the government is acting as an employer, ..." (internal citations omitted)).

9. Plaintiff's First Amendment retaliation claim is based upon her right to petition the government for redress, which is a constitutionally protected right. *See Genas v. State of N.Y. Dep't of Corr. Servs.,* 75 F.3d 825, 833 (2d Cir.1996) (citations omitted).

10. Rather than rely upon *Monell* to support her claim against DCJS, Plaintiff relies upon the Second Circuit's decision in *Gant v. Wallingford Bd. of Educ.,* 195 F.3d 134 (2d Cir. 1999), to argue that her § 1983 claim should be analyzed under the same deliberate indifference standard applicable to claims under Title IX. Although *Gant* is instructive, the Court disagrees with Plaintiff that *Gant* is directly on point. In particular, the Court

notes that the court in *Gant* specifically did not address the appropriate standard for determining the liability of the Wallingford Board of Education. *See Gant,* 195 F.3d at 140 n. 4 ("[b]ecause we conclude below that a jury could not reasonably find that school officials acted with deliberate indifference, we do not decide the standard under which the Wallingford Board of Education might be held liable for the deliberate indifference of its agents."). To a certain extent, DCJS's position with respect to the retaliatory actions of Director Flanagan and the Academy is analogous to the position of the Wallingford Board of Education vis-a-vis the discriminatory acts of the students and parents against the plaintiff in that case. Therefore, the Court finds that *Gant* left open the question that the Court must answer in the present case—the standard under which DCJS might be held liable for its alleged deliberate indifference to the retaliatory acts of Director Flanagan and the Academy, neither of which is an agent of DCJS.

Moreover, the Court finds that *Gant* is distinguishable on its facts and that its reasoning is confined to the particular setting in which *Gant* occurred—a public secondary school. Therefore, the Court disagrees with Plaintiff's contention that *Gant* requires that the Court

prove three elements: "(1) that an official policy or custom is in place; (2) that there is a causal·link between plaintiff['s] alleged constitutional injury and the policy or custom; and (3) that plaintiff[ ] in fact suffered a constitutional injury." *People United for Children, Inc. v. City of N.Y.*, 108 F.Supp.2d 275, 302 (S.D.N.Y.2000) (citing *Zahra v. Town of Southold*, 48 F.3d 674, 685 (2d Cir.1995) (citations omitted)). A municipality cannot be held liable under a *respondeat superior* theory. *See Soto*, 960 F.Supp. at 756. Rather, a municipality may be held liable only " 'when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury.' " *Id.* (quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037) (other citation omitted). As the court noted in *Soto*, the Supreme Court has set forth a number of guiding principles to assist courts in making this determination:

> "First, ... municipalities may be held liable under § 1983 only for acts for which the municipality itself is actually responsible, 'that is, acts which the municipality has officially sanctioned or ordered.' ... Second, only those municipal officials who have 'final policymaking authority' may by their actions subject the government to § 1983 liability.... Third, whether a particular official has 'final policymaking authority' is a question of *state law*.... Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in *that area* of the city's business...."

*Id.* at 757 (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123, 108 S.Ct. 915, 924, 99 L.Ed.2d 107 (1988) (internal

citations to *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (emphasis in original))) (footnote omitted).

■■■ A court can identify individuals who have policymaking authority "by their receipt of such authority through express legislative grant, or through their delegation of policymaking authority from those to whom the power has been expressly granted." *Id.* Moreover, "a municipal policy may be found where there is a 'widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law.' " *Id.* (quoting *Praprotnik*, 485 U.S. at 126–27, 108 S.Ct. at 926 (internal quotation marks omitted)).

■■■ Generally, a single act cannot establish municipal liability, unless it was a municipal policymaker who acted. *See id.* (citing *Pembaur*, 475 U.S. at 480, 106 S.Ct. at 1298). If the employee who took the action at issue was not a final policymaker, " 'the city could be liable only for the policymaker's delegation and supervision, not the subordinate's exercise of authority.' " *Id.* (quoting *Walker*, 974 F.2d at 296 (citing *Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926)). "[O]f course, a municipality is liable where the policymaker ratifies a subordinate's decisions or acts." *Id.* (citation omitted). As the Second Circuit has noted, " '[i]n order to hold a municipality liable under § 1983 for the conduct of employees below the policymaking level, a plaintiff must show that the violation of his constitutional rights resulted from a municipal policy or custom.' " *Id.* (quoting *Dwares*, 985 F.2d at 100 (internal quotations and citations omitted)). Thus, " '[w]hen an official's discretionary deci-

---

analyze her § 1983 claim under the "same" deliberate indifference standard applicable to Title IX cases. Rather, the Court concludes

that *Monell* provides the appropriate standard to use in analyzing Plaintiff's claim against DCJS.

sions are constrained by policies not of that official's making, those policies, rather than the subordinate's departure from them, are the acts of the municipality.'" *Id.* at 759 (quoting *Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926) (other citation omitted).

In the present case, Plaintiff's claim against DCJS is based upon a single act— DCJS's refusal to grant her an extension of time in which to complete the basic course.[11] Thus, Plaintiff must establish that Deputy Commissioner Burrell is the final policymaker at DCJS responsible for determining what constitutes exigent circumstances and for deciding whether to grant requests for extensions of time pursuant to N.Y. Comp.Codes R. & Regs. tit. 9, § 6020.7(b).[12] In addition, Plaintiff must establish that there is a causal link between Deputy Commissioner Burrell's refusal to grant her an extension of time, even after learning that Director Flanagan and the Academy had retaliated against her for filing a claim of discrimination, and the violation of her First Amendment right to petition the government for redress. Finally, Plaintiff must prove that she suffered a constitutional injury.

With respect to the first element of her claim, Plaintiff asserted at oral argument that Deputy Commissioner Burrell was the final policymaker at DCJS with the authority to decide whether to grant requests for extensions of time in which to complete the basic course. Although DCJS did not object to this characterization of Deputy Commissioner Burrell's scope of responsibility, the Court must determine for itself whether state law provides Deputy Commissioner Burrell with this authority. *See Soto,* 960 F.Supp. at 757 n. 4 ("The determination of whether individual actors hold policymaking authority is a question of law for the judge to decide." (citations omitted)).

Section 836 of New York Executive Law provides that the Commissioner of DCJS "shall be the chief executive officer of and in sole charge of the administration of [DCJS]." N.Y. Exec. Law § 836(2) (McKinney 1996). Pursuant to that same section, "[t]he commissioner may appoint such deputies, directors, assistants and other officers and employees, . . . as he may deem necessary, [and] prescribe their powers and duties, . . ." N.Y. Exec. Law

**11.** Deputy Commissioner Burrell initially denied Plaintiff's request for an extension of time in which to complete the basic course by letter dated January 12, 1998. He subsequently upheld his decision in November 1998 and refused to certify Plaintiff as a police officer in December 1998. Although Deputy Commissioner Burrell actually made three decisions with respect to Plaintiff, all three decisions were based upon a single reason—Plaintiff's failure to demonstrate that exigent circumstances prevented her from completing the basic course within one year of the date of her appointment. Therefore, these three decisions are properly considered to be a single action for purposes of this analysis.

**12.** Section 6020.7(b) provides that

[a] police officer who, because of exigent circumstances, is unable to complete a basic course within the one-year period pre-

scribed by subdivision (a) of this section may apply through his or her employer for an extension of this period by the commissioner. Such applications shall be made in writing and must describe the circumstances which necessitate the application. Illustrative of exigent circumstances are: the officer's inability to complete a basic course for health reasons or the temporary unavailability of a training program within a reasonable distance from the officer's place of employment. If the commissioner determines that circumstances warrant extension of the one-year period, he or she may grant approval of such extension. In no instance shall this period be extended beyond a total of two years from the initial date of appointment as a police officer, except as otherwise required by law.

N.Y. Comp.Codes R. & Regs. tit. 9, § 6020.7(b).

§ 836(4) (McKinney 1996). In addition, the Commissioner of DCJS

shall, with the general advice of the council, and, in the case of subdivisions one, two and three, only in accordance with rules and regulations promulgated by the governor pursuant to section eight hundred forty-two: ... 3. Certify police officers ... who have satisfactorily completed basic training programs and issue certificates to such police officers ...

N.Y. Exec. Law § 841(3) (McKinney 1996 & Supp.2002).

■■■■ At her deposition, Commissioner Lapp stated that she spends very little time on issues related to the Office of Public Safety, which is the division of DCJS that is responsible for maintaining the training curriculum for police officers. *See* Transcript of the Deposition of Katherine Lapp, dated July 11, 2000 ("Lapp Tr."), attached as Exh. "A" to the Affidavit of Richard A. Maroko, sworn to April 23, 2001 ("Maroko Apr. Aff."), at 12. She also testified that Deputy Commissioner Burrell was the primary decision maker with respect to the functions within the Office of Public Safety. *See id.* Commissioner Lapp also stated that she would leave decisions regarding whether to extend an individual's appointment period or to certify her as a police officer to Deputy Commissioner Burrell and others in his office. *See id.* at 18. Similarly, at his deposition, Deputy Commissioner Burrell stated that it was within his discretion, based upon information provided to him by his staff, to decide whether a particular reason constituted exigent circumstances. *See* Transcript of Deposition of Jerry Burrell, dated June 26, 2000, attached to the Maroko Jun. Aff. at Exh. "B" at 51.[13] Based upon the applicable provisions of the New York Executive Law and the rules and regulations promulgated thereunder, as well as Deputy Commissioner Burrell's admission as to the scope of his authority, the Court concludes that Deputy Commissioner Burrell is the final policy maker with respect to the issues in this case and that, therefore, his actions can be imputed to DCJS. Accordingly, the Court concludes that Plaintiff has established the first element of her claim.

With respect to the second element of her claim, Plaintiff acknowledges that at the time that Deputy Commissioner Burrell denied her initial request for an extension of time to complete the basic course, he did not know that Director Flanagan and the Academy had retaliated against Plaintiff in violation of her First Amendment rights. However, she argues that Deputy Commissioner Burrell's decision to ignore Chief Lathrop's resubmission of this request in January 1998 clearly demonstrates deliberate indifference to her First Amendment rights. Plaintiff bases this argument on that fact that attached to Chief Lathrop's letter was a copy of Director Flanagan's July 29, 1997 letter, which conclusively established that the Academy and Director Flanagan had retaliated against her and that, based upon this letter, Deputy Commissioner Burrell had actual knowledge that Plaintiff's First Amendment rights had been violated.

**13.** After oral argument, the Court instructed the parties to submit short letter-briefs on the issue of whether Deputy Commissioner Burrell was the final policymaker responsible for determining what constitutes exigent circumstances and for deciding whether to grant requests for extensions of time to complete the basic course for police officers pursuant to N.Y. Comp.Codes R. & Regs. tit. 9, § 6020.7. Defendant confirmed that the Commissioner was the final policymaker within DCJS and that she had delegated decisions regarding extensions of time to complete the basic course for police officers to Deputy Commissioner Burrell. *See* Defendant's Letter to the Court dated June 26, 2002.

■ Moreover, Plaintiff argues that had DCJS granted her request for an extension of time to complete the basic course once it had actual knowledge that Director Flanagan and the Academy had retaliated against her, she would have completed the basic course within the one year extension period and, therefore, would have been entitled to receive a certificate of completion from DCJS.[14] Based upon these facts, the Court concludes that Plaintiff has proven the second element of her claim.

■ With respect to the third element of her claim, as noted above, there is no dispute that Plaintiff suffered a constitutional injury. The only issue is whether she suffered this injury as a result of DCJS's deliberate indifference to her constitutional rights. Based upon the particular facts of this case, the Court finds that DCJS is responsible under *Monell* for Plaintiff's constitutional injury because it was deliberately indifference to her constitutional rights. Chief Lathrop's January 1998 letter to DCJS was not a second, separate request for an extension of time but rather was intended to supplement his December 1997 request for an extension on Plaintiff's behalf by setting forth what he considered to be exigent circumstances. Once Deputy Commissioner Burrell received Chief Lathrop's January 1998 letter, which included a copy of Director Flanagan's July 29, 1997 letter, Deputy Commissioner Burrell had actual knowledge that the Academy and Director Flanagan had retaliated against Plaintiff, and, therefore, he was required to engage in a reasonable course of action to ensure that

Plaintiff's filing of a claim of discrimination did not prevent her from completing the basic course and receiving a certificate of completion from DCJS within the appropriate time-frame. Deputy Commissioner Burrell's decision not to respond to this request was patently unreasonable given the information he had. Likewise, his response to Plaintiff's attorney's October 22, 1998 letter, which included another copy of Director Flanagan's July 29, 1997 letter, that he would not reconsider his original determination because Plaintiff had not shown that there were any exigent circumstances warranting an extension of time was also unreasonable. Finally, Deputy Commissioner Burrell's refusal to provide Plaintiff with a certificate of completion after receiving Director Flanagan's December 4, 1998 letter, stating that Plaintiff had successfully completed the basic course, based, once again, upon Deputy Commissioner Burrell's contention that Plaintiff had not shown exigent circumstances, clearly demonstrates that DCJS was deliberately indifferent to Plaintiff's constitutional rights.

For all these reasons, the Court concludes that Plaintiff has established that DCJS is liable to her for the violation of her First Amendment right to petition the government for redress; i.e., that the constitutional injury that Plaintiff suffered was caused by the actions of the final policymaker at DCJS with the authority to decide what constituted exigent circumstances for the purposes of granting an extension of time in which to complete the basic course. Accordingly, the Court

14. Had DCJS granted Plaintiff a one-year extension, she would have had until December 23, 1998 to complete the basic course. Plaintiff was retested and passed the defensive tactics examination on November 14, 1998, and Director Flanagan wrote to DCJS on December 4, 1998, stating that Plaintiff had successfully completed the basic course. Had DCJS responded to this letter as it normally would have—rather than continuing to argue that Plaintiff had failed to demonstrate exigent circumstances warranting an extension of time in which to complete the basic course—DCJS would have issued Plaintiff a certificate of completion with the statutorily mandated time period.

**140**

holds that DCJS must issue a certificate of completion to Plaintiff, certifying that she has completed the basic course pursuant to N.Y. Comp.Codes R. & Regs. tit. 9, § 6020.6(f) ("Upon certification by a director stating that a police officer has satisfactorily completed all basic course requirements, the commissioner shall issue a certificate of completion to such police officer.").

## IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments, and the applicable law, and for the reasons stated herein and at oral argument, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED** with respect to Plaintiff's Fourteenth Amendment due process and equal protection claims; and the Court further

**ORDERS** that Defendant's motion for summary judgment is **DENIED** with respect to Plaintiff's First Amendment retaliation claim; and the Court further

**ORDERS** that Plaintiff's motion for partial summary judgment is **GRANTED** with respect to her First Amendment retaliation claim; and the Court further

**ORDERS** that Defendant Lapp, in her official capacity as Commissioner of the State of New York Division of Criminal Justice, is to issue a certificate of completion to Plaintiff, pursuant to N.Y. Comp. Codes R. & Regs. tit. 9, § 6020.6(f), within **twenty days** of the date of this Order; and the Court further

**ORDERS** that the Clerk of the Court is to enter judgment and close this case.

**IT IS SO ORDERED.**